[No. 8695. Department One. September 22, 1910.]

GEORGE CATTERSON, *Respondent*, v. RUSSELL L. IRELAND et al., *Appellants.*[1]

VENDOR AND PURCHASER — PERFORMANCE — BREACH BY VENDEE— WAIVER—CONSIDERATION FOR PROMISE. Where the purchaser of land agreed to sow one-half of the same in wheat, and deposit one-half of the proceeds to be applied in deferred payments and interest, the acceptance by the vendor of such part of the proceeds does not waive defaults of the purchaser in failing to cultivate half of the land or pay the taxes; and surrender of such money belonging to the vendor would constitute no consideration for a promise to waive the defaults.

VENDOR AND PURCHASER—CONTRACT—BREACH BY VENDOR—DAMAGES—TENDER OF PAYMENT. In an action at law for damages for breach of a contract to convey premises, a legal tender of the amount due on the purchase price is necessary; and it is not suffi-

[1] Reported in 110 Pac. 1002.

cient that the purchaser merely asked the vendor if he would accept payment in full and he stated that he would not, where there was no production of the money or offer to produce it.

Appeal from a judgment of the superior court for Grant county, Steiner, J., entered October 27, 1909, upon findings in favor of the plaintiff, after a trial on the merits before the court without a jury, in an action on contract.   Reversed.

*W. W. Zent* and *John M. Cannon*, for appellants.

*C. J. Lambert* and *Southard & Southard*, for respondent.

FULLERTON, J.—On August 17, 1906, the appellants and the respondent entered into a contract for the sale of real property, of the tenor and effect following:

"This agreement by and between R. L. Ireland and Anne Ireland, his wife, of Tacoma, Pierce county, Washington, parties of the first part, and George Catterson, of Wilson Creek, Douglas county, Washington, party of the second part.

"The first parties hereby agree to sell and the second party hereby agrees to buy all of section one (1), township twenty (20), north of range twenty-nine (29) east of the Willamette Meridian, containing 662.84 acres for the sum of ninety-four hundred twenty-nine and 75-100 ($9,429.75) dollars, in the manner following, to wit: Twenty-five hundred ($2,500.00) dollars in cash, the receipt of which is herewith acknowledged, and the balance, sixty-nine hundred and twenty-nine and 75-100 ($6,929.75) dollars to be paid as hereinafter provided.

"Said party of the second part shall deliver at a warehouse on the line of the Great Northern railroad one-half of all the wheat raised on the land each year, properly sacked, free of expense to said parties of the first part, the receipts from the warehouse from said one-half the wheat are to be in the name of said parties of the first part and left at the Citizens Bank of Wilson Creek, Washington.

"Said party of the second part shall sell said wheat at his option any time previous to November 1st of each year.   If not sold by November 1st the parties of the first part shall sell the wheat at that time and are to apply the proceeds on

14—60 WASH.

this contract. The proceeds of the wheat disposed of each year shall be applied as follows:

"(1)   Interest on all money due at eight per cent (8%).

"(2)   Balance to be applied on principal until the entire debt, principal and interest, shall be paid in full.

"(3)   It is further agreed that said party of the second part shall have the privilege of paying any additional amounts that he shall desire on this contract from year to year.

"It is also agreed that said party of the second part shall pay all taxes on the above described land before delinquency, commencing with the taxes for the year 1906 and that they shall keep fences in good condition.

"It is understood and made a part of this contract that said party of the second part shall in the spring of 1907 plow one-half of the tillable land in said section and put same into wheat in the fall of 1907, or the spring of 1908, and shall in the spring of 1908 plow the balance of the tillable land and put same into wheat in the fall of 1908 or the spring of 1909, and shall thereafter sow one-half of the land in wheat each year. The party of the second part shall cultivate the land in the best manner each year, taking care of the crop in due season, threshing, harvesting and properly protecting said wheat after it is harvested so long as the contract shall continue. After sown in fall wheat if said wheat be not in satisfactory condition by March 15th of each year, said land must be re-sown in spring wheat.

"It is understood and made a part of this contract that all the balance then unpaid shall be liquidated in full on November 1st, 1913. Therefore, upon final payment of principal and interest as stated in above contract, said first parties, their heirs or assigns, shall make said second party, his heirs or assigns, a good and complete warranty deed to said premises.

"In case of nonfulfillment by said second party of any of the above conditions herein and above specified, this contract shall be null and void so far as any right of title to said second party, and all amounts already paid by said second party shall be forfeited to said first parties as damages thereby liquidated for the nonfulfillment of this contract."

The respondent made the cash payment provided for on

the delivery of the agreement and entered into possession of the property, but failed to comply with his contract in any other particular. He plowed only two hundred acres of the six hundred and sixty-two and a fraction acres the section contained during the spring of 1907, and in the spring of 1908 some eighty acres in addition; but the whole amount so plowed did not equal one-half of the tillable land on the section. The land plowed in 1907, he sowed to wheat in 1908, and realized therefrom, thirteen hundred and twenty-eight bushels, the proceeds of the sale of one-half of which' he placed in a bank, where it was held awaiting the appellants' order. The wheat sold for $531.20, but little more than one-third of the interest then due upon the remainder of the purchase price of the land. He also failed to pay the taxes assessed against the property then due.

In November, 1908, the appellants called upon the respondent for a settlement, and were paid the money then in the bank. Thereafter, in February, 1909, the appellants again called up the respondent for the purpose of obtaining some settlement of the matters between them, and entered into an agreement with him to the effect that he would surrender the contract and move off the premises in consideration that the appellants would waive all further claims. against him. A written order on the person holding the contract, directing him to deliver it to appellants was made out and handed to the appellants, but before the appellants reached the depository the respondent countermanded the order, and the person holding the contract refused to deliver it over. At this time the question of settlement was again discussed, and various methods by which it might be accomplished were suggested, among which was the payment in full in cash of all the sums remaining due on the contract, including the taxes. No tender was made of these sums, nor was it shown that the respondent was able to pay them; the respondent and his counsel testified merely that the appellant Russell L. Ireland was asked by the respondent if he would

accept payment in full and stated that he would not. No settlement was effected, and shortly thereafter the appellants served upon the respondent a notice to quit, whereupon the respondent moved off the land and brought the present action against the appellants for a breach of the contract, laying his damages in the sum of $5,353.92, the difference between the contract price of the land and its alleged value at the time the notice to quit was served. This action was tried before the court sitting without a jury, and resulted in findings and a judgment for the full amount claimed. This appeal was taken therefrom.

The trial court seems to have reasoned that the acceptance of the money deposited in the bank operated as a waiver on the part of the appellants of the defaults in the performance of the contract committed by the respondent, so that the contract stood, at the time of the attempted settlement, as one whose conditions had been performed as fully as either party was then required to perform them; that the statement of the appellants to the effect that they would not accept the amount due when inquiry was made of them at that time, and the subsequent serving of a notice to quit by the appellants, amounted to a breach of the contract on their part, justifying the respondent in removing from the land, and giving him a cause of action in damages.

But it has seemed to us that the court is in error in assuming that the acceptance by the appellants of the money derived from the proceeds of the crops operated as a waiver of the defaults in the other conditions. Such an assumption overlooks the fact that the respondent was under the same obligation to turn over the money as he was to perform the other conditions of the contract, and the acceptance of the payment could no more operate as a waiver of the conditions to plow and seed a certain number of acres of the land at a given time, than would the acceptance of the plowing and seeding operate as a waiver of the payment of the money. They were separate conditions, and the appellants had the

right to exact the performance of each of them. It is said in the court's findings, although we find nothing in the evidence to support it, that the appellants agreed, in consideration of the payment, to waive the other defaults and restore the respondent to his full rights under the contract, but if this were true it would not alter the case. The respondent had no right to retain the money. It was the appellants' property, hence its surrender could furnish no consideration for such a promise.

Nor do we think the statement of the appellants, to the effect that they would not accept payment in full of the amount due on the contract, amounted to a waiver of a tender of the money. This was a law action for the breach of a contract, and the appellants have a right to rely on the legal rules governing tenders, and to insist that the respondent show a compliance therewith before they can be put in default. That the acts of the respondent and his attorney did not amount to a common law tender can hardly be doubted. There was no production of the money nor offer to produce it. On the contrary, it appears clearly that neither the respondent nor his attorney had any such sum under their control; the most that either one claimed was that a third person had expressed a willingness to buy the property if it could be obtained at the price the respondent had contracted to pay for it.

There was, therefore, no default of the terms of the contract on the part of the appellants, nor waiver on their part of the default of the respondent. To allow the respondent to recover was error, and the judgment will be reversed, and the cause remanded with instructions to enter a judgment to the effect that the respondent take nothing by his action.

RUDKIN, C. J., GOSE, CHADWICK, and MORRIS, JJ., concur.