[No. 9296.   Department Two.   March 3, 1911.]

PHILIP GOTTSCHALK, *Executor etc., Respondent*, v.
ALLEN MEISENHEIMER, *Appellant*.[1]

APPEAL—REVIEW—HARMLESS ERROR—PLEADINGS.   After a trial on the merits in an action tried to the court without reference to technical rulings on the pleadings, assignments of error on such rulings will not be reviewed.

VENDOR AND PURCHASER—FORFEITURE—NOTICE—NECESSITY—TENDER OF PAYMENTS—TIME FOR.   Where a vendee in default was given an alternative notice to pay up on or before a certain date or the contract "will be forfeited," a tender of all sums due, made before formal notice of forfeiture, although after the date fixed, is in time and entitles the vendee to performance on the part of the vendor.

VENDOR AND PURCHASER—CONTRACTS—AGREEMENT FOR WARRANTY—PASSING TITLE THROUGH THIRD PERSON.   A vendor agreeing to execute or cause to be executed a good and sufficient warranty deed cannot convey or assign his rights to a third person, and compel the vendee to accept a warranty deed from such person; and it is immaterial that the legal title was held in trust for him by still another party at the time his contract of sale was made.

SAME — FORFEITURE — DEFAULTS — WAIVER—TENDER BY VENDOR. Where the vendor has allowed all the payments on a contract of sale to become past due, he cannot declare a forfeiture of the contract without tendering a deed and performance on his part.

TENDER—OBJECTIONS—ESTOPPEL.   The refusal of a tender on the ground that it was not made in time, precludes the party from subsequently objecting that it was not sufficient in amount.

VENDOR AND PURCHASER—FORFEITURE—DEMAND—TENDER—AMOUNT DUE.   Upon an alternative notice by a vendor asserting a default and requiring the vendee to pay in full or forfeiture would be declared, upon a tender of the full amount before forfeiture, the full amount becomes due *ipso facto*.

Appeal from a judgment of the superior court for Grant county, Steiner, J., entered August 20, 1910, upon findings in favor of the plaintiff, after a trial on the merits before the court without a jury, in an action on contract.   Affirmed.

[1]Reported in 113 Pac. 765; 115 Pac. 79.

*Merritt, Oswald & Merritt,* for appellant.

*W. E. Southard,* for respondent.

CHADWICK, J.—In September, 1899, defendant, Allen Meisenheimer, with three others, one of whom was C. F. Clodius, entered into a contract *inter sese,* wherein it was agreed that they would purchase certain railroad lands of the Northern Pacific Railway Company. The contract with the railroad company was made in the name of C. F. Clodius, and upon its fulfillment the railroad company deeded the lands to C. F. Clodius, the title passing from the company on October 10, 1904. On the 30th day of January, 1903, Christian Gottschalk entered into a written contract with appellant for the purchase of a fractional section of land. He paid the sum of $200 on the execution of the contract, and agreed to pay the remainder in annual payments running from November 1, 1903, to November 1, 1909. Following the execution of the contract, Christian Gottschalk entered into possession of the land, and from that time he made no payments thereon. To the readers of the opinions of this court it may be superfluous to say that the appellant, after the execution of the contract with Clodius et al., and during the life of the contract which is before us, became somewhat involved in his matrimonial affairs. The history of his ventures is in part recited in the case of *Meisenheimer v. Meisenheimer,* 55 Wash. 32, 104 Pac. 159, 133 Am. St. 1005, and *Cash v. Meisenheimer,* 53 Wash. 576, 102 Pac. 429.

For reasons which, for the sake of the argument which is to follow, we may assume grew out of his matrimonial troubles, the appellant, upon division of the Northern Pacific lands with his co-owners, caused a conveyance to be executed by Clodius to Maud Motley, afterwards Meisenheimer, who on the 11th day of September, 1908, served a notice upon Christian Gottschalk and his wife, asserting that she was the owner and holder of the executory contract of sale executed by Gottschalk, asserting the default in the several payments due

thereon, and notifying the Gottschalks that, "unless said sums,
so due as above set out and enumerated are fully paid by you
on or before the first day of October, 1908, said contract
will be forfeited by me and declared at an end, and you will
forfeit all rights therein and to the real estate described
therein and all sums you have paid upon said real estate under
said contract and any improvements which you have made or
placed upon said premises." The Gottschalks did not meet
this demand within the time limited, but on the 10th day of
October, they did tender to appellant the full amount due,
with accumulated interest, and demanded a deed. The tender
and demand were refused, upon the ground that they came too
late. On October 12, 1908, Maud Meisenheimer returned the
notes which Gottschalk had executed for the several payments.
due under the contract, and therewith notified the Gottschalks
in writing that, "by reason of your failure to make the pay-
ments as provided in that certain land contract bearing date
January 30, 1903, by and between Allen Meisenheimer, party
of the first part, and Christian Gottschalk, the party of the
second part, . . . the undersigned, to whom the aforesaid
land contract and the aforesaid real estate has been trans-
ferred and conveyed, has heretofore declared all your right,
title and interest in and to said contract and said land therein
described forfeited, together with the payments theretofore
made;" and demanded a surrender of the possession of the
property. On October 15, 1908, Maud Motley Meisenheimer
commenced an action against Gottschalk and his wife for the
forfeiture of their rights. On October 17, this action was
commenced by Christian Gottschalk, who has since died, the
action being prosecuted by his executor, respondent herein.
A demurrer to the complaint was overruled, and a demurrer
to certain affirmative matter set up by the appellant was
sustained. These rulings are assigned as error.

We think the demurrer to the complaint was properly over-
ruled, and inasmuch as the case seems to have been tried
upon its merits without reference to the technical ruling of

the court upon the answer, we feel justified in holding that these assignments are not well taken. Other assignments go to the merits of the case, and rest upon exceptions to the findings and to the refusal of the court to enter certain other findings.

This action was brought to recover damages for a breach of an executory contract to convey, and a recovery was allowed upon the theory that appellant had defaulted and was answerable for the damages sustained by his vendee. Appellant insists that this case falls within, and is controlled by the rule announced in *Cash v. Meisenheimer, supra,* and *Catterson v. Ireland,* 60 Wash. 208, 110 Pac. 1002, and that respondent is without remedy because of the default of his testator. It was held in the cases noted that the vendee could not recover because of his defaults. But it will be noticed that this court said in the *Cash* case:

"The basis of recovery in the action is that the respondent [Cash] himself was not in default, and that the appellant was in default. The complaint alleged facts showing such basis. But the evidence of the respondent showed conclusively that he was in default at the time of the forfeiture."

In the *Catterson* case, we said:

"The respondent made the cash payment provided for on the delivery of the agreement and entered into possession of the property, but failed to comply with his contract in any other particular. . . . Nor do we think the statement of the appellants, to the effect that they would not accept payment in full of the amount due on the contract, amounted to a waiver of a tender of the money. This was a law action for the breach of a contract, and the appellants have a right to rely on the legal rules governing tenders, and to insist that the respondent show a compliance therewith before they can be put in default."

Now, in this case, although Gottschalk was in default in the payment of his notes, he was not, by reason of his tender, in default on his contract. We have held that a forfeiture in such cases is not worked by merely defaulting in payments,

but that the forfeiture must be declared by some appropriate notice to the vendee. Or, if we concede that Gottschalk was in default, appellant is not in a position to assert a forfeiture. He relies upon, and is bound by, the conduct of Maud Meisenheimer, the holder of the legal title, and when she gave an alternative notice of forfeiture, Gottschalk would have until the time fixed therein and until the forfeiture was formally claimed to meet the demand of the notice. Appellant seems to have acted upon this theory when he caused Maud Motley Meisenheimer to give the second notice or, as it may be called, the formal notice of forfeiture and demand for possession. In the meantime a tender had been made to appellant of the full amount due on the contract, and the default of respondent's testator, if any, was thus relieved.

This brings us to the principal, if not the controlling, question in the case: Was respondent bound to make tender to, or accept a deed from, Maud Motley Meisenheimer, who it is alleged, was at all times, prior to the notice of forfeiture, ready, able, and willing to carry out the terms of the contract? The original contract of purchase provided that appellant would, upon "the full payment of the amounts therein agreed to be paid, execute, or cause to be executed, to the party of the second part or the second party, a good and sufficient warranty deed for said premises." The rule is that:

"It is generally held that unless the contract expressly provides that the deed shall be made by a third person, it must be made by the vendor himself, even though the words of the contract are that the vendor shall execute the deed or cause it to be executed," 29 Am. & Eng. Ency. Law (2d ed.), 701.

See, also, *Hussey v. Roquemore*, 27 Ala. 281; *Rudd v. Savell*, 44 Ark. 145; *Gaar v. Lockridge*, 9 Ind. 92.

But where the vendor agrees to convey, with covenants of warranty or by warranty deed sufficient in form, he cannot satisfy his promise by passing the title through another. *Setiner v. Zwickey*, 41 Minn. 448, 43 N. W. 376; *Bigler v. Morgan*, 77 N. Y. 312; *James v. Burchell*, 82 N. Y. 108.

Appellant insists that these general rules cannot apply here because, at the time the original contract was entered into, the title did not rest in the name of appellant, but in that of his co-owner, Clodius, and that a fair reading of the authorities will show that it has never been applied in such cases. But we cannot distinguish this case from the general rules, for we may well presume—if indeed we are not so compelled— that the inducement of the contract was the promised covenants of warranty. Although Clodius may have conveyed the bare legal title, if it still rested in him at the time of the tender, it would nevertheless have been the duty of the appellant, if Gottschalk insisted upon it, to convey his equitable title laden with his promised warranties. *Crabtree v. Levings*, 53 Ill. 526. Or, if it be held that Gottschalk would be bound to receive the deed of Clodius, who held the title and of which fact he may have had notice, it does not follow that appellant could cause a deed to be executed by Clodius to a third party and compel the acceptance of such title by his vendee, for the warranty of one man may be acceptable while that of another may be deemed worthless. In *Miner v. Hilton*, 15 App. Div. 55, 44 N. Y. Supp. 155, it is said:

"In *James v. Burchell*, 82 N. Y. 108, the contract in question contained a like provision, that the plaintiffs agreed to 'convey, or cause to be conveyed,' to the defendant the premises in fee by a full covenant warranty deed. The plaintiffs conveyed the premises to another. It was held that this, under the circumstances of the case, relieved the defendant from further performance of the contract, and in the opinion of the court it was said that some stress was laid upon the provision in the contract, that the plaintiffs 'agreed to sell and convey, or cause to be conveyed.' This, it was held, was not controlling, and that the testimony showed that the defendant did not intend to accept any other warranty than that of the plaintiffs. It is reasonable to suppose that usually, when a vendee takes a contract containing a provision for conveyance with covenants of warranty, he has in view the responsibility of his vendor, unless something appears to the

contrary in the contract. The provision · that the vendor will do it, or cause it to be done, as expressed in the contract in question, does not, I think, indicate a purpose to enable him to relieve himself from making the covenant by the substitution of such other person as he may choose to take the relation of grantor and covenantor."

At any rate, in such cases it should be held to be optional with the vendees ; and being so, it is not for this court to compel a situation which, looking to the whole transaction, it is apparent they sought to avoid in the beginning and refused to accept in the end.

From what we have said it follows that the judgment of the lower court can be sustained upon another ground. While appellant could allow one or all of the payments to become delinquent and not lose his right of forfeiture (*Reddish v. Smith,* 10 Wash. 178, 38 Pac. 1003, 45 Am. St. 781), he cannot gain an advantage over his adversary where he allows all of them to become delinquent without a declaration of his rights. Gottschalk was remiss, but appellant was apparently content that he should be so. His declaration of forfeiture is based upon the default of the last payment as well as the first. The whole sum was due and a deed forthcoming. By the first notice of forfeiture he treated the contract as still in force, and through Maud Motley Meisenheimer declared his ability to perform. This brings him within the rule of *Stein v. Waddell,* 37 Wash. 634, 80 Pac. 184, and kindred cases collected in *Reese v. Westfield,* 56 Wash. 415, 105 Pac. 837, and made it incumbent on him to not only tender a deed from the holder of the legal title, but demonstrate his own ability to perform. He did neither, and Gottschalk was not deprived of his legal rights.

Respondent might, in our judgment, have compelled a specific performance, but he is content to claim his damages. These the court assessed at $1,870, being some little less than the value of the improvements as claimed by respondent. We

think the action to be well founded in law, and the judgment of the lower court sustained by the testimony.

Affirmed.

DUNBAR, C. J., CROW, and MORRIS, JJ., concur.

ON PETITION FOR REHEARING.

[Decided April 24, 1911.]

PER CURIAM.—A petition for rehearing has been filed herein, in which it is contended that the court has wrongfully applied the former decisions of this court, in that, in this case, all of the payments were not due on the contract at the time the first notice of forfeiture was given, and hence, there was no duty incumbent on Meisenheimer to tender a deed.

We cannot agree with this contention. Before taking up that feature of the case, we held that because of the personal covenants of Meisenheimer, the notice of forfeiture given by Maud Motley Meisenheimer was ineffectual to work a forfeiture of the contract. Our decision might have been made to rest upon this ground alone, but because we found the whole of the purchase price to be due, we went further and put our decision upon the additional ground, that where the covenants of an executory contract were mutual and dependent, that a forfeiture could not be declared without a tender of the deed. It is said:

"It is unquestionably the law that if all the payments are due, the vendor must tender performance before he can put the vendee in default. If all the payments had been due we certainly would have tendered a deed with the declaration of forfeiture.

"The last two payments being not yet due, that rule does not apply here. Until November 1st, 1909, total payment could not be required nor was conveyance required.

"The making of intermediate payments was not concurrent with making the deed."

The record in this case shows that one Lambert, acting for Gottschalk, and after the ineffectual declaration of forfeiture had been made, tendered the sum of $4,344.83 and demanded

a deed. He further testifies that no objection was made to the amount of the tender, that it was refused solely because it came too late. This, under a well settled rule of law, would estop Meisenheimer from claiming that the amount was insufficient. At the time the contract was executed, there was a balance due of $2,985. Tender was made five years, eight months and ten days after the execution of the contract. The interest for that time at eight per cent amounts to $1,359.83, or a total of $4,344.83. Our remark in the former opinion, "His declaration of forfeiture is based upon the default of the last payment as well as the first, the whole sum was due and a deed forthcoming," may be misleading; but when considered in connection with our holding that Maud Motley Meisenheimer could not forfeit the contract, or relieve Meisenheimer of his covenants, it seems clear to us Gottschalk had the right to tender all payments "on or before" the due date, and when he did make the tender, the full amount became due *ipso facto.* He thus put the burden on Meisenheimer, who could not escape liability by reference to the act of Maud Motley Meisenheimer, who admittedly was in no position to carry out the contract.

Meisenheimer now relies upon the first declaration of forfeiture, but it is evident that when making up his case he did not rely upon that alone. It was in the alternative; it declared that if payment was not made as demanded, "Said contract will be forfeited and declared at an end." All notes were retained, and no attempt was made to assert a forfeiture by positive declaration or return of the notes given to evidence the deferred payments until October 12, 1908, two days after Gottschalk had tendered the full amount due and was entitled to his deed. Whether an alternative declaration of forfeiture, under a contract where notes collateral thereto had been executed, would forfeit the rights of the vendee until the notes had been tendered back was not decided by us, nor do we now pass upon that question. There are cases holding that it cannot be done. *Comstock v. Brosseau,* 65 Ill.

39.   It is enough when it appears that no notice sufficient to satisfy the law had been given at the time the tender was made.   By the terms of the contract, a tender being made before any legal forfeiture occurred, the whole purchase price became due and Gottschalk was entitled to his deed. Our decision is that there was no forfeiture; that a tender was made in time; that a deed was forthcoming; that Gottschalk was not bound to pay one who could not perform; that he might have had specific performance; and waiving that remedy, he could recover his damages.   Rehearing denied.