[No. 4004.   Decided July 5, 1902.]

DAVID KINKADE, *Appellant,* v. J. W. WITHEROP *et al., Respondents.*

IRRIGATION DISTRICTS — ISSUANCE OF BONDS — PROCEEDINGS — DUE PROCESS OF LAW.

The fact that a section in the act authorizing the organization of irrigating districts and the sale of bonds therefor makes provision for testing the legality of proceedings had thereunder by permitting the institution of a special proceeding by the board of directors of the irrigation district, without the requirement of personal service upon the property owners affected, would have no bearing upon the question whether the proceedings had for the organization of the district, or the issuance of bonds, were without due process of law, but that objection would apply only to the judgment rendered in the special proceedings and would not thereby affect the constitutionality of the whole act.

SAME — VALIDITY OF BONDS.

An irrigation district was in debt to a contractor for work on its canal in the sum of $18,300 and was unable to pay him, by reason of the failure of the purchaser of its bonds to advance the money thereon.  The contractor agreed with the board of directors of the district to accept bonds at ninety per cent. of their

face value in payment of his claim, and bonds of the par value of $20,000 were accordingly delivered to him in satisfaction of his claim. *Held*, that a consideration existed for the issue of the bonds, and that the transaction was equivalent to a payment in cash for their sale.

SAME — INTEREST.

A purchaser of bonds issued by an irrigation district was unable to pay the price for the bonds issued and dated July 1st. In September following these bonds were delivered to another purchaser who gave $18,300 for $20,000 worth of bonds under an agreement to take them at ninety per cent. of their par value. At the time of payment for the bonds nearly three months' interest had accrued thereon, while the contract under which they were sold provided that they should draw interest "from and after the date of payment therefor." *Held*, that the $300 paid by the purchaser in excess of the ninety per cent. of the face value of the bonds was a substantial compliance with the contract.

SAME — NEGOTIABILITY.

The requirement of the statute that bonds issued by an irrigation district be "negotiable in form" means that the bonds shall contain words of negotiability and be in fact negotiable, and the recital on their face that they are payable from a particular fund would not affect their negotiability, though contrary to the rules prescribed by the law merchant.

JUDGMENTS — ENTRY BEFORE EXCEPTIONS TAKEN TO FINDINGS — EFFECT.

The action of the trial court in entering judgment immediately upon filing its findings of fact and conclusions of law, though filed in the absence of, and without notice to, the losing party, would not constitute reversible error.

Appeal from Superior Court, Kittitas County.—Hon. JOHN B. DAVIDSON, Judge. Affirmed.

*William H. Upton,* for appellant.

*Graves & Englehart,* for respondents.

The opinion of the court was delivered by

FULLERTON, J.—The appellant's action is in form an action to remove a cloud from title. Its purposes are to

test the constitutionality of the act of the legislature of this state entitled "An act providing for the organization and government of irrigating districts, and the sale of bonds arising therefrom, and declaring an emergency," and the act amendatory thereof (Session Laws 1889-90, p. 671; Id., 1895, p. 432), and to test the validity of certain bonds issued by the Middle Kittitas Irrigation District, a corporation organized pursuant to the statutes cited.

The question of the constitutionality of these statutes has been twice before this court; first in the case of *Board of Directors v. Peterson,* 4 Wash. 147 (29 Pac. 995), and again in *State ex rel. Witherop v. Brown,* 19 Wash. 383 (53 Pac. 548). In the first of these cases it was said that, in view of the opinion of the trial court, and the concessions made on the argument by counsel, but one question was presented for the decision of the court, viz., is an irrigation district formed under the provisions of the act a municipal corporation within the meaning of § 6, art. 8, of the state constitution? it being conceded that, if the act contemplated the organization of a municipal corporation, it was void, owing to its failure to comply with certain provisions of the constitution providing for the regulation of such corporations. This question was, therefore, the only question discussed in the opinion. But, notwithstanding this, we cannot think the court meant to leave open all other questions that might be urged against its constitutionality. The trial court had held the act unconstitutional, and the case was here on appeal from that decision. From the record it appeared that the district organized pursuant to the act was about to engage in a vast enterprise, costing a large sum of money. It was proposing to issue bonds to raise money to carry on that enterprise. These bonds the

court knew would be sold by the district to persons who
would purchase them relying upon the faith of its decision
upholding the law.    Certainly, the court would not, under
these circumstances, have overruled the trial court on mere
concessions of counsel had it conceived that any of the ob-
jections suggested were of merit, or that there were other
reasons which if urged would require it to overturn the act.
Aside from its inherent improbability, the whole tenor of
the opinion is against such a conclusion, and we think the
case is entitled to the weight of an adjudication by this
court not only upon the question discussed, but upon all
questions that might be urged against the constitutionality
of the law.    This view of that decision seems to have been
taken by the court in the second case cited.    That was a pro-
ceeding in mandamus to compel the board of county com-
missioners of Kittitas county to levy a tax to pay certain
interest that had accrued upon bonds issued by the dis-
trict of which the board of directors in the first action was
appellant.    The unconstitutionality of the act was
again urged.    The court, however, did not discuss
the question, contenting itself with the statement
that it saw nothing to convince it that the act was unconsti-
tutional.    As *stare decisis* is the policy of the courts the
question of the constitutionality of the act might be rested
on these decisions, but as the appellant suggests the further
question, namely, that the act deprives him of his property
without due process of law, and thus violates the federal
constitution, we will notice for a moment the provisions of
the act upon which the claim is founded.

Section 73 of the act (Laws 1889-90, p. 703) provides
that the board of directors of an irrigation district organ-
ized under the provisions of the act may commence a special
proceeding in the courts, "in and by which the proceedings
of said board and of said district providing for and author-

izing the issue and sale of the bonds of said district, whether said bonds or any of them have or have not then been sold, may be judicially examined, approved and confirmed." The scheme provided for this purpose authorized the board of directors of the district to file in the superior court of the county in which the lands of the district, or some portion thereof, are situated, a petition praying, in effect, that the proceedings had in the issuance of bonds be examined, approved, and confirmed by the court; that the court shall fix a time for hearing the petition, and shall thereupon direct the clerk to give notice of its filing, and of the time and place fixed for its hearing; and that "the notice shall be given and published in the same manner and for the same length of time, that a notice of a special election provided for by this act to determine whether the bonds of said district shall be issued is required to be given and published,"—that is to say, no personal service of the notice is required. The appellant argues that, inasmuch as the act creates a lien upon all of the lands in the district for the amount of the bonds issued, and provides that such lands may be taxed *in invitum* and sold for the non-payment of such tax, it is, in effect, a law depriving the owners of their property, and is without due process of law, because it attempts to provide that the legality of the bond issue may be established in a proceeding had upon substituted service, while the law is that a person, before he can be disturbed in his property rights, must be personally served with summons or notice when he resides within the jurisdiction of the court, and can be so personally served. The case of *In re Smith's Petition,* 9 Wash. 85 (37 Pac. 311, 494), is cited as maintaining the position. In that case the act of March 9, 1893 (Laws 1893, p. 237), providing for the establish-

ment of county roads, was held unconstitutional upon the ground, among others, that it did not provide for personal service of notice upon resident land owners whose lands would be taken in part by the establishment of the road. While a distinction might be pointed out between the principle of that case and the case in hand, we cannot think it applicable, even were it conceded that the rule there announced would apply to a proceeding of the character of the one before us. If it be true that the notice provided for is not sufficient to render a judgment entered in a proceeding had thereunder of binding force against such of the resident land owners of the district who are not personally served, and who do not appear and contest the proceeding, that fact would not render the whole act void, nor would it in any manner affect the validity of the proceedings had in the organization of the district, or the validity of the proceedings leading up to the bond issue. This part of the act was intended to furnish the officers of the district a means by which they could have the validity of the proceedings had in the organization of the district submitted to the judgment of the court as to their sufficiency when, in their judgment, it was deemed so advisable; but it was not made obligatory upon the officers to so submit it, nor was it made an essential part of the proceedings necessary to effect an organization of the district, or to effect an issuance of bonds thereafter. If, therefore, the legislature sought to give such judgment a greater effect than it could constitutionally have for lack of personal service, it would affect the judgment only, and could have no bearing upon the question whether the proceedings had for the organization of the district, or the issuance of bonds after the district was organized, were without due process of law. The validity of these proceedings must be determined from

an examination of the proceedings themselves, and the laws applicable thereto, not from the examination of the law enacted to provide a special means for testing their validity in the courts.

The appellant does not seem to contend that the provisions of the act controlling the issuance of the bonds violate any other provision of the federal constitution, and we have not felt called upon to discuss the question. As authorities, however, upholding similar statutes where such questions were raised, we cite the following: *Hagar v. Reclamation District,* 111 U. S. 701 (4 Sup. Ct. 663) ; *Fallbrook Irrigation District v. Bradley,* 164 U. S. 112 (17 Sup. Ct. 56) ; *Chicago, B. & Q. R. R. Co. v. Chicago,* 166 U. S. 226 (17 Sup. Ct. 581).

An understanding of the second objection necessitates a brief statement of the facts. The Middle Kittitas Irrigation District was organized in 1891. Shortly after its organization it authorized, in the manner provided by statute, an issue of bonds in the aggregate amount of two hundred thousand dollars. It also entered into a contract with one Peter Costello for the construction of an irrigating canal and irrigating works, by the terms of which Costello was to be paid monthly ninety per centum of the value of the work as it progressed, on estimates returned by the engineer in charge. To procure the money to meet these payments, the board of directors of the district entered into a contract with Clough & Graves for the sale of the entire issue of the bonds above mentioned, to be paid for at ninety per centum of their par value, $25,000 worth on July 1, 1894, and $25,000 worth every thirty days thereafter until the whole amount should be taken. Clough & Graves were unable to comply with their contract, and, as a consequence, the district was unable to meet the sums due Costello on his estimates as they became due. In

satisfaction of one of these estimates, for which he had
received a warrant on the district treasurer amounting to
$18,300, Costello agreed to accept the bonds of the dis-
trict at ninety per centum of their face value. An arrange-
ment was thereupon made between the president of the
board of directors and secretary of the district acting for
the district and Clough & Graves and Costello, by which
bonds of the face value of $20,000 were delivered to Cos-
tello in satisfaction of the amount of the estimate. The
action of the president and secretary was afterwards rati-
fied by the district's board of directors. These bonds the
appellant claims were illegally issued, and do not consti-
tute an indebtedness of the district. The objections urged
against them are that there was no consideration for their
issue, that they were not paid for in cash, that they pro-
vided for the payment of more interest than the statute
permitted, and that they are not negotiable in form. That
the bonds were issued to Costello for an indebtedness of
$18,300 actually due him from the district abundantly ap-
pears from the record, and we cannot see how it can be
said that there was no consideration for their issue. If
the statute contemplated or required a sale for cash, we
think the transaction between the parties amounted to that.
The bonds had been contracted to Clough & Graves and
were to be delivered to them when they paid to the district
the purchase price agreed upon. If Costello had paid
Clough & Graves $18,300 for the $20,000 worth of bonds
received by him, and Clough & Graves had paid this sum
to the district, and the district had again paid it out to
Costello, the transaction would have been admittedly legal.
But the actual transaction between the parties amounted
to that. Costello had a right to purchase the bonds from
Clough & Graves. Clough & Graves owed the district and
the district owed Costello. If the parties chose to satisfy

2—29 Wash.

these mutual obligations by transferring the bonds, certainly it was not necessary to the legality of the transaction that they actually pass the money between them. The claim that the bonds provided for the payment of more interest than the statute permitted is based upon the facts that the contract with Clough & Graves provided that the bonds should draw interest "from and after the date of the payment therefor," and that the bonds were dated on July 1st, and drew interest from that date, while the payment was made in September following. It may be doubted whether these facts, were they all that appeared, would have invalidated the bonds; but it appears that Costello paid $300 more for the bonds than he was obligated to do under his agreement to purchase them to make up for this accumulated interest. This was at least a substantial compliance with the contract, and, as it violated no provision of the statute, neither the district nor any of its members can be heard to complain. The last part of the objection is based upon the provision of the statute which requires bonds issued by an irrigation district to be "negotiable in form." The bonds issued recited, among other things, that "All of the said bonds and the interest thereon, to be paid by revenue derived from an annual tax upon the real property of the district, . . ." It is said that commercial paper payable out of a particular fund is not negotiable, and hence these bonds are not negotiable in form. The recital objected to correctly recites the source from which the statute provides the bonds shall be paid, and the language used is a part of the language of the statute authorizing their issuance. But we are unable to see how this recital can change the nature of the bonds. Were they silent on the matter,—that is, did they contain nothing more by way of recital than the mere promise to pay a fixed sum at a certain time,—the law

itself would read the recital into each bond issue, and they would be no more negotiable in fact without the recital than with it. The statute must mean, therefore, that the bonds shall contain words of negotiability, not that they shall be in form deceptive of their actual effect. But we do not mean to say the bonds are not negotiable in fact. On the contrary, it is the plain purpose of the statute to make them negotiable, and the law will, for that reason, hold them so, notwithstanding they may not comply with the rules of negotiability prescribed by the law merchant or the common law. As was said by the supreme court of the United States in *Mercer County v. Hacket*, 1 Wall. 83:

"This species of bonds is a modern invention, intended to pass by manual delivery, and to have the qualities of negotiable paper; and their value depends mainly upon this character. Being issued by states and corporations, they are necessarily under seal. But there is nothing immoral or contrary to good policy in making them negotiable, if the necessities of commerce require that they should be so. A mere technical dogma of the courts of the common law cannot prohibit the commercial world from inventing or using any species of security not known in the last century. Usage of trade and commerce are acknowledged by courts as part of the common law, although they may have been unknown to Bracton or Blackstone. And this malleability to suit the necessities and usages of the mercantile and commercial world is one of the most valuable characteristics of the common law. When a corporation covenants to pay to bearer and gives a bond with negotiable qualities, and by this means obtains funds for the accomplishment of the useful enterprises of the day, it cannot be allowed to evade the payment by parading some obsolete judicial decision that a bond, for some technical reason, cannot be made payable to bearer. That these securities are treated as negotiable by the commercial usages of the whole civilized world, and have received the sanctions of judicial recognition, not only in this court,

but of nearly every state in the Union, is well known and admitted."

It appears that the trial court entered a judgment immediately upon filing its findings of fact and conclusions of law, which were filed in the absence of and without notice to the appellant's counsel. It is contended that the statute (§ 5052, Ballinger), inasmuch as it allows the party desiring to except to the findings five days in which to do so after service of the same upon him when signed subsequently to the hearing and in his absence, contemplates that the judgment shall not be entered until the exceptions are filed, or the time for excepting has expired. While, perhaps, this may be the better practice, as it gives to the trial court an opportunity to review its findings in the light of the exceptions, it does not constitute reversible error. The losing party may still except within the time, and appeal in the regular way. It does not drive him, as the appellant suggests, to a motion or petition to vacate, in order to have the judgment reviewed on appeal.

Finding no substantial error in the record, the judgment appealed from will stand affirmed.

HADLEY, ANDERS, MOUNT, DUNBAR and WHITE, JJ., concur.

REAVIS, C. J., concurs in result.