[No. 21618. *En Banc.* February 1, 1929.]

THE STATE OF WASHINGTON, *on the Relation of James L. Wells, Plaintiff*, v. HENRY HARTUNG *et al., Defendants*, SUNNYSIDE VALLEY IRRIGATION DISTRICT *et al., Respondents*, CHRISTIAN SCHLAGEL *et al., Appellants.*[1]

[1]Reported in 274 Pac. 181.

*M. M. Moulton* and *Fred J. Cunningham,* for appellants.

*Preston, Thorgrimson & Turner,* for respondents.

*Williamson & LaBerge,* for interveners-respondents.

HOLCOMB, J.—This case was presented to the trial court upon issues tendered by the pleadings, which consisted of the complaint of respondent as plaintiff, the answer of defendants, the directors of the Richland Irrigation District, a complaint in intervention filed by Schlagel and wife, on behalf of themselves as property owners of the irrigation district and others similarly situated, and a complaint in intervention filed by certain irrigation districts; also by amendments, admissions, stipulations and certain statements made at the time of the submission of the cause to the trial court.

Upon the case so made, the following appear to be the facts.

Richland Irrigation District was legally established, its organization approved and confirmed judicially and bonds issued, in the ordinary form and in due course, in the sum of $538,000, in 1918. The bonds bear interest at six per cent per annum, payable semi-annually.

Until 1928 the irrigation district was able to pay the interest accruing semi-annually on the bonds. When this suit was begun it was largely in default in the interest due January 1, 1928. It is now largely de-

linquent on the interest due July 1, 1928. Although the annual bond interest is $32,280, the directors levied assessments for 1928 yielding only $31,568.71, or $711.29 short of the annual interest. Of this, they assessed $10,047.56 against lands owned by the district and $5,035.60 against lands owned by Benton county, leaving only $16,485.55 of assessments against privately owned lands—or slightly over one-half the required amount.

Appellants admit that the statute requires the board to levy assessments in a sufficient amount to pay the interest as it accrues, and that it is the duty of the board, under the statute, when making the annual levy, to estimate the amount of the probable delinquencies on the levy so made, and to levy a sufficient amount to cover such estimated delinquencies and, in addition thereto, to cover any deficit that may have resulted on account of delinquencies in preceding years.

In making the 1927 levy, the directors were of the opinion that the district would have revenues, other than those derived from assessments, sufficient in amount to pay all interest on the outstanding bonds, including the interest accruing on January 1 and on July 1, 1928, and therefore refused to ignore such other sources of revenue and to levy an assessment sufficient in and of itself to pay the accruing interest, including estimated delinquencies.

Following the plan adopted by the board in 1927, the board will, in making up the 1928 roll, depend in part upon sources of revenue other than assessments for funds with which to pay the interest on the bonded indebtedness. The sources of revenue, other than assessments, relied upon by the board in making their 1928 levy arise out of the following conditions:

Since the organization of the district to and including the assessment levy for 1926, the boards of di-

rectors, in levying assessments for the payment of interest upon bonded indebtedness, proceeded upon the theory of law that all land in the district would remain liable for the payment of the entire indebtedness without limitation. As the result of such theory the payment of assessments on large areas in the district has been discontinued, with the result that many thousand acres of land have been conveyed to Benton county, and other large areas have been conveyed to the district and the title now remains vested in the county or the district. In many other cases certificates of sale are now outstanding on account of the delinquent assessments, which certificates of sale must be redeemed within the period fixed by law or the title to the lands covered thereby are vested in the district.

In the opinion of the directors of the district, this condition is due to the fact that large numbers of land owners are unwilling to continue the payment of assessments without definite knowledge of the ultimate amount of their obligation. In making up the assessment roll and in levying the assessments in 1927 for bond interest, the board concluded that it is not the law that each acre of land in the district remains liable, without limitation, until the final payment of the bonded indebtedness, but that each acre subject to assessment continues liable until it has paid an amount equal to the benefit derived from the construction of the improvement, and no more.

When levying the 1927 assessment, the directors were also of the opinion that the correct application of the law would immediately result in the sale and settlement of the district and county lands and the redemption from certificates of sale then outstanding, and in a consequent increase in the revenue of the district in an amount which, together with the pro-

ceeds of the assessment, would provide revenue for the payment of interest at maturity.

In making up the 1927 assessment roll, the district secretary included therein a statement showing the maximum amount of benefits derived by each tract of land in the district from the construction of the improvement for which the bonds were issued, which maximum benefit was measured by the increase in value, as found by the secretary, resulting from the improvement. The assessment roll was equalized by the directors in the manner provided by statute, and extended as provided by the statute in an amount sufficient, together with other estimated revenues, to pay the interest on the indebtedness.

It is the opinion of the directors that the revenue thus relied upon, together with the assessment that will be levied in 1928, will be sufficient to provide revenue for such purpose, and relying thereon the board will not levy an amount alone sufficient to pay the interest and estimated delinquencies. The board found that the interest assessment paid by the interveners Schlagel exceeded the total increase in the value of their lands resulting from the improvement, and unless required so to do will not levy any assessment against the land of these interveners in the year 1928.

Respondent, holder of bonds of the district, claiming it to be the duty of the board to levy an assessment sufficient to pay all past due and accrued interest and sufficient to cover all estimated delinquencies, without regard to other possible sources of revenue, brought this action to compel the board to make the 1928 levy in accordance with respondent's contention and to ignore the sources of revenue above described.

The trial court entered judgment requiring appellants to make the additional levy as prayed.

The trial court also inadvertently and errone-

ously entered a judgment for costs on behalf of the intervening irrigation districts, who are only generally and as similar corporations concerned in the litigation. These interveners disclaim any right to such costs, and the judgment shall be modified striking costs in favor of the intervening irrigation districts.

The issues alleged to be presented by the pleadings are stated by appellants as follows:

"(1) The law governing assessments is being correctly applied by the board as follows:

"Each acre of land in the district is obligated for the entire bonded indebtedness in an amount equal to, but not exceeding, the total benefit derived by that acre from the construction of the improvements for which the bonds were issued.

"(2) In arriving at the amount of the levy in a given year, it is the duty of the directors to estimate fairly and honestly the revenue to be derived by the district from all sources, and to levy an amount which, added to other sources of revenue, will provide sufficient funds for the payment of the annual interest, making due allowances for estimated delinquencies.

"(3) In estimating the revenue to be derived from sources other than from assessments, the directors are entitled to take into consideration the increase in revenue, if any, resulting from the application by the board of the legal theory that assessments will be limited by the maximum benefit, as distinguished from the legal theory that each acre of land is ultimately bound for the full amount of the bonded indebtedness without limitation, and, basing their opinion upon their experience, knowledge of the district and judgment, to find and determine the revenue to be derived from such source.

"(4) If it is the opinion of the board, honestly and fairly arrived at, that the sources of revenue which they have taken into consideration, together with the assessment made, will be sufficient for the payment of all interest on the bonded indebtedness, whether delinquent or whether accruing in 1929, then it becomes their duty to levy no more than will be required for

that purpose in addition to other revenues, and in the absence of a showing of fraud or arbitrary conduct on the part of the board, or in the absence of a condition in the pleadings or admissions or evidence from which the court can conclude that the directors acted arbitrarily or fraudulently, or from which the court can conclude that the board's reliance upon other revenue is without lawful foundation, the court is bound by the determination of the directors.

"(5) The benefit accruing to a given parcel of land from the construction of the improvement in question is measured by the resultant increase in value. When such benefit has been fairly and lawfully determined it includes the amount that may be levied against such parcel of land for the payment of both the principal of the bonded indebtedness and interest thereon, from which it follows that the interveners, Christian Schlagel and Mary Schlagel, his wife, having paid bond interest assessments in excess of the maximum benefit accruing to their land from the construction of the improvement, are now entitled to have their land excluded from further assessment for the outstanding bonds."

The intervening irrigation districts, while not directly interested in this litigation, contain approximately 120,000 acres of land under irrigation, and operate and maintain canals for the delivery of water to such lands. Each of them has outstanding bonds for which they are required to make annual levies, and which ultimately will be required to be paid. Their position and argument is opposed to that of appellants here.

The five issues set forth by appellants may all be discussed and determined under the general subject of the nature of the liability of an irrigation district under our statutes.

Rem. Comp. Stat., § 7434, in part, reads as follows:

"Said bonds and interest thereon and all payments due or to become due to the United States or the state

of Washington under any contract between the district and the United States or the state of Washington accompanying which bonds of the district have not been deposited with the United States or the state of Washington, as in § 7429 provided, shall be paid by revenue derived from an annual assessment upon the real property of the district, and all the real property in the district shall be and remain liable to be assessed for such payments until fully paid as hereinafter provided.''

Appellants derive comfort from the words ''as hereinafter provided'' in the above section, and point to Rem. Comp. Stat., § 7436, which in part reads:

''Assessments made in order to carry out the purposes of this act shall be made in proportion to the benefits accruing to the lands assessed and equitable credit shall be given to the lands having a partial or full water right; . . . The secretary must, between the first Monday in March and the first Tuesday in September in each year, to and including the year 1923, and between the first Monday in March and the first Tuesday in November beginning with the year 1924 and each year thereafter, prepare an assessment-roll with appropriate headings in which must be listed all the lands within the district. In such book must be specified, in separate columns, under the appropriate headings:

''First, the name of the person to whom the property is assessed. If the name is not known to the secretary, the property shall be assessed to 'unknown owners.'

''Second, land by township, range, section or fractional section, and when such land is not a legal subdivision, by metes and bounds, or other description sufficient to identify it, . . .

''Third, in further columns with appropriate headings shall be specified the ratio of benefits, or, when deemed by the secretary more practicable, the per acre value, or the amount of benefits, for general and special district and local improvement district purposes, and the total amount assessed against each tract of land.''

It is argued that the irrigation statutes as a whole mean that no land can be assessed for more than the amount of the benefits accruing to it; citing *Kadow v. Paul,* 134 Wash. 539, 236 Pac. 90; *Linn v. Walla Walla County,* 99 Wash. 224, 169 Pac. 323.

It is then argued that, although irrigation district bonds are general corporate obligations, the lands in the district must remain liable for assessment to pay the bonds until they are fully paid or until the lands have paid, on account of the assessments for bond purposes, the equal amount of the benefits received from the object for which the bonds were issued; that no lands can be subjected to any additional liability than the amount of the benefits to such lands, or the statute would be unconstitutional.

This court has determined the constitutionality of such organization acts, upholding their validity. *Board of Directors Middle Kittitas Irr. Dist. v. Peterson,* 4 Wash. 147, 29 Pac. 995; *State ex rel. Witherop v. Brown,* 19 Wash. 383, 53 Pac. 548; *Kinkade v. Witherop,* 29 Wash. 10, 69 Pac. 399.

A hearing having been provided after notice as to the organization, boundaries of and inclusion of lands to be benefited within the district to be organized (Rem. Comp. Stat., § 7418), such procedure is universally declared constitutional. *Kinkade v. Witherop, supra; Fallbrook Irrigation District v. Bradley,* 164 U. S. 112.

█ It was alleged in the reply of respondents, and not denied:

"That, prior to the issuance and sale of the bonds described in the complaint, the board of directors of said Richland Irrigation District, pursuant to the statute providing therefor, commenced a special proceeding in the above entitled superior court for the purpose of having the proceedings for organizing said district and the proceedings of said board and of said district providing for and authorizing the issue and sale of

the said bonds judicially examined, approved and confirmed; that the said proceeding was commenced by a lawful petition as provided by law, and due notice was given thereof, and the said special proceeding was duly heard by said court, and thereafter and prior to the issuance and sale of said bonds the said proceeding for the issuance and sale of said bonds and the legality and validity thereof were duly confirmed by the judgment and decree of said court, and no appeal was ever taken therefrom.''

This allegation of fact is followed by a plea that appellants and all the property owners in Richland Irrigation District are estopped by the confirmation proceedings to make claim that the benefits to the lands within the irrigation district, accruing from the improvements made from the proceeds of the bonds, are not at least equal to the total amount of the principal and interest of the bonds. There is a similar plea in the answer to the intervening complaint of the interveners Schlagel.

In 1922, in *State ex rel. Clancy v. Columbia Irrigation District,* 121 Wash. 79, 208 Pac. 27, construing the statute, as it then was, providing that all the land within an irrigation district should be subject to and remain liable for the payment of its obligations, we held that the law created a specific lien upon the property belonging to an irrigation district at the time its bonds were issued, and an individual holding situated within the bounds of the district was not the property of the district; that the bonds were general obligations of the district, for which all the property in the district was subject to be assessed for payment of the entire obligation, in case delinquent assessments left a deficiency.

We also there held that the law in force at the time of the levy and collection of taxes for the payment of irrigation bonds should be followed, if practicable, un-

less it failed to give proper protection to the bondholder, in which event the law in force at the time they were issued should apply. In that case, also, assessments had been made by the district which had failed to produce sufficient money to pay the interest on the bonds, and several years were in arrears.

At the time of the hearing, about fifty per cent of the land had been sold for general state and county taxes, and about eighteen per cent additional had been sold to the district for assessments, leaving less than thirty two per cent in the names of the individual holders. The district was actually in much worse case than the district now before us.

Rem. 1927 Sup., § 7440, requires the board of directors of such districts to levy a sufficient amount to raise the ensuing annual interest on the outstanding bonds or all payments due or to become due in the ensuing year to the United States. They are also required to make an assessment for operation and maintenance costs for the ensuing year. The section then contains this provision:

. "The board shall also, at the time of making the annual levy estimate the amount of the assessments to be made against lands owned by the district, including local improvement assessments, and shall levy a sufficient amount to pay said assessments."

The validity of this provision and that it is mandatory upon the board, has been held by this court in *Burbank Irrigation District No. 4 v. Douglass,* 143 Wash. 385, 255 Pac. 360.

It must be conclusively presumed, from the due adjudication of the organization of the district in 1918, determining the lands to be therein included, the amount of bonds to be issued and the interest to be paid thereon, that the total benefits to the lands comprised in the district were then finally adjudicated.

Each tract of land within the district then became generally liable for the payment of the bonds and interest.

While appellants argue that interest cannot be considered as part of the benefits for which assessments may be levied, when any lands within the district have paid as much as the total benefits, yet every tract of land within the district became then liable, not only for the principal as the amount of the benefits, but for the interest. Since it was heretofore so judicially determined, the directors have no option, under the statutes quoted, but to levy assessments as the statutes specify.

Nor have the land owners any right to question the assessments on the theory that they have paid assessments equalling the total amount of their benefits. The lands passing into the ownership of the district are not to be considered as liabilities, but assets. It may be that, during periods of depression in the market value of such lands, such as have prevailed for some years, the lands do not appear to be assets. Their temporary exclusion from liability to pay assessments is anticipated by the provisions of the statutes we have quoted. These observations apply to interveners Schlagel and others similarly situated, as well as to the directors of the district, in the operation of the law.

Appellants argue that the effect of the *Clancy* case, *supra,* has been overruled, modified, or repudiated in some of our later cases. *Kadow v. Paul, supra,* is cited to the effect that the liability of one owner in a diking district to make up the delinquency of another is secondary and not primary; but that secondary liability, if it exists here, is covered by the fact that the delinquencies actually exist here and the statutes require them to be made up.

*Union Trust Co. v. Carnhope Irrigation District,* 132 Wash. 538, 232 Pac. 341, 234 Pac. 277, seems to be

relied upon by appellants as holding that under no circumstances could the general liability of the district or the land owners therein be made to cover more than the actual measure of the benefits against the lands improved. That was an action to cancel an assessment-roll of the district where the assessment had been made at so much per acre, regardless of the benefits to varying tracts.

We held the assessment to have been made on a fundamentally wrong basis. The case in no wise involved the question of general obligation of the land owners benefited, or what was the measure of the assessment that could be levied as against any property. There were many general expressions made in the opinion, respecting things as to which no question was raised, which should not control our judgment in a subsequent suit when the very point is presented for decision.

We do not consider that we have ever departed from the principle announced in the *Clancy* case, *supra.*

Courts of other states, having irrigation district organizations and statutes governing assessments similar to ours, have followed the same rule, some of them later than the *Clancy* case, *supra,* following the rule there stated.

In *Stevens v. Melville,* 52 Utah 524, 175 Pac. 602, concerning such deficiency assessments, that court said:

"Such provisions, at most, are intended only to meet immediate necessities. Ultimately a part or all of the land which is in default of payment will be sold to meet the deficiencies."

To the same effect is *Cosman v. Chestnut Valley Irrigation District,* 74 Mont. 111, 238 Pac. 879.

Upon the question of general liability for the payment of bonds and interest, see above cases and also *Norris v. Montezuma Valley Irrigation District,* under

the irrigation district laws of California, 248 Fed. 369; Orr v. Allen, 245 Fed. 486, quoted approvingly in Kadow v. Paul, supra.

The provision of the statute for a lien upon the water rights and other property of the district, for the benefit of the bond holders, is only by way of precaution and for further security, and was not intended in any wise to take the place of assessments required by the statutes. The foreclosure of such a lien in the place of the enforcement of such assessments, as required by law, would defeat the very purpose of the irrigation law, as to that district, by taking away all the means of functioning as an irrigation district and distributor of water. In the event that all the lands within the district pass out of private ownership and be in the ownership of the county or the district, or both, then of course that provision may be enforced.

What we have said as to the general requirements of the statutes as to assessments for delinquencies practically decides the question of the liability of interveners Schlagel and others similarly situated.

Appellants cite Behrens v. Commercial Waterway District No. 1, 107 Wash. 155, 181 Pac. 892, 185 Pac. 628, to the effect that assessments levied by a waterway district cannot exceed the maximum benefits. Our irrigation district statutes are quite different from waterway district statutes. In that case we also stated that we were not holding that the act might not have provided for the payment of interest. The irrigation statutes do provide for the payment of interest, as well as principal, and for the determination of the benefits prior to the issuance of the bonds.

While the argument made by appellants is very appealing to the effect that the district is apparently approaching utter collapse; that no one will buy the land which may ultimately be held for the entire bonded

indebtedness; that the private land owner cannot borrow money on his land with which to pay his annual increasing assessments, our duty is to apply the law as we see it. We think we announced the correct rule in the *Clancy* case, *supra*, and it remains the correct rule. No legislation and no judicial interpretation of the legislation will prevent disaster under certain conditions. The conditions are to blame, not the legislation.

We are convinced that the decree of the trial court is right and should be affirmed, with the exception heretofore noted. It is so ordered.

MITCHELL, C. J., PARKER, BEALS, TOLMAN, MAIN, and FRENCH, JJ., concur.