[No. 23513. *En Banc.* August 8, 1932.]

J. T. ROBERTS, *Appellant,* v. RICHLAND IRRIGATION DIS-
TRICT *et al., Respondents,* J. T. S. LYLE *et al.,
Individually and as Trustees, Interveners.*[1]

*Venables, Graham & Howe* and *Albert Olsen,* for ap-
pellants.

*M. M. Moulton,* for respondents.

*Preston, Thorgrimson & Turner,* for interveners.

*Harold H. Hartman, Warren H. Lewis, Fred J.
Cunningham, Crollard & O'Connor,* and *Marion Ed-
wards, Amici Curiae.*

MILLARD, J.—J. T. Roberts, on behalf of himself and
others similarly situated, brought this action to enjoin
the Richland Irrigation District and its directors and

[1]Reported in 13 P. (2d) 437.

the commissioners and the treasurer of Benton county from levying, or spreading upon the record of the county, any assessment for the payment of the interest or the principal of the district's bonds (which were issued to pay for district improvements),

" . . . against any particular tract of land within said district which will require the payment by the owner of said land of an amount in excess of the special benefit actually accruing to each particular tract of land by reason of the acquiring of water rights and making of improvements by the district, and the issuance of bonds as hereinabove referred to."

The interveners (certain owners and holders of bonds issued by the district), who appeared individually and as trustees, and the defendants interposed demurrers, which were sustained. The appeal is from the judgment of dismissal rendered upon the plaintiff's refusal to plead further.

The allegations of the complaint are, substantially, as follows: Appellant is the owner of forty acres of land in the Richland Irrigation District. That district was legally established and its organization approved and confirmed judicially in 1919. Thereafter, pursuant to statutory requirements, the district issued bonds in the sum of $538,000, the proceeds from the sale of which were used to purchase additional water rights and to pay the cost of improvements essential to the irrigation of the lands within the district. The bonds bear interest at the rate of six per centum per annum, payable semi-annually.

By reason of the improvements made by the district, the thirty-five irrigable acres of appellant's forty-acre tract were benefited ten dollars an acre; that is, total benefits of three hundred and fifty dollars accrued to appellant's forty-acre tract by reason of the improvements made by the district. The ultimate amount of

the liability of the appellant's land for assessments for bond purposes during the ten-year maturing period of the bonds is five hundred and sixty dollars (three hundred and fifty dollars plus interest of six per centum per annum for ten years). For the years 1920 to 1929, inclusive, appellant paid an aggregate of $1,168.65 in assessments against his forty acres for the payment of interest and principal of the bonds described above.

The directors of the district have made all preparations for, and are threatening to levy for the year 1930 an assessment of $757.53 against the lands of the appellant for the purpose of meeting interest and principal on the bonds. No part of the levy is made on account of, or with reference to, any special benefit accruing to the real property of the appellant. The assessment was levied for the purpose of creating a fund to take up or eliminate the deficiencies in the bond interest and bond retirement funds

" . . . due wholly or in part to a failure of certain landowners within the district to pay assessments which have heretofore or will hereafter be levied against lands in said district belonging to such other persons."

The directors of the district informed the appellant that it is their fixed policy and that they propose to,

" . . . assess and re-assess all delinquencies which have heretofore or may hereafter accrue against the lands of this plaintiff and other lands in the district which continue to pay their assessments, without delinquency, until the lands of this plaintiff, and the lands of other persons who have and who shall hereafter pay the assessments levied will create a fund sufficient to pay the entire outstanding indebtedness, and retire said bonds, both principal and interest, and that they propose to make such assessment without reference to the special benefits which have accrued to the real property of this plaintiff and any other landowners

in the district who may continue to pay their assessments, but to be governed and determined in making said assessments solely by a consideration of the amount of money required to pay said indebtedness, . . . ''

Is the annual assessment against each tract of land within an irrigation district for the payment of interest or the principal of bonds issued to pay the cost of irrigation district improvements limited to the maximum benefits accruing to the tract of land by reason of such improvements? That is the only question, which is not an open one in this state, presented by this appeal.

Counsel for appellant contend that the irrigation act requires that the maximum benefits received by such tract of land within the district from the issuance of the district bonds be determined annually; and that the benefits so ascertained establish the limit of the assessment against each tract of land for bond purposes. It is insisted that the statute, if it authorize the annual levy of assessments for bond purposes in excess of benefits received from such bond issue, is unconstitutional in that the taking of property without due process of law is thereby made possible.

No question is raised as to the legality of the formation of the district or of the inclusion of all lands within the district. Counsel concede that the aggregate benefits to the lands within the district equal the bonded indebtedness of the district and that the lands of the appellant have been benefited to some extent. It is not contended that, as between appellant's land and other privately owned land, the former is disproportionately assessed. The question, argue counsel for appellant, is:

''Assuming the legal organization of an irrigation district after notice and hearing upon the question of organization, boundaries, inclusions of land to be benefited and the total amount of benefits to all the lands

within the district, is the individual landowner entitled to another hearing after due notice for the purpose of allocating to his land its just proportion of the benefits, and does the benefit thus allocated limit his liability to pay?"

An irrigation district is a public corporation having some of the powers of a municipal corporation. The bond obligation is a general corporate obligation. The landowner is not entitled to a segregation of his share of the obligation at the time it is created, or at a later time. There is no provision in the irrigation act for a segregation at any time. The obligation is a general one and all lands within the district are subject to taxation for the payment of the entire obligation. *State ex rel. Clancy v. Columbia Irrigation District,* 121 Wash. 79, 208 Pac. 27; *State ex rel. Wells v. Hartung,* 150 Wash. 590, 274 Pac. 181.

In 1919 there was a due adjudication of the organization of the district determining the lands to be included within the district, the amount of bonds to be issued and the interest to be paid thereon. It must be conclusively presumed, from that adjudication, as we said in *State ex rel. Wells v. Hartung, supra,*

" . . . that the total benefits to the lands comprised in the district were then finally adjudicated. Each tract of land within the district then became generally liable for the payment of the bonds and interest."

The bond obligation was established. That liability was adjudicated to be within the limits of total benefits. Under the statute (Rem. Comp. Stat., § 7434), all lands within the district became and will remain subject to specific assessment, in proportion to benefits, until the obligation is paid. The statute provides that irrigation district bonds and interest thereon shall be paid

by revenue derived from an annual assessment upon the real property of the district

" . . . and all the real property in the district shall be and remain liable to be assessed for such payment until fully paid as hereinafter provided." § 7434, *supra.*

The first tribunal determined at the beginning what lands would be benefited and whether the aggregate of benefits to those lands would equal the cost of irrigating them. By that tribunal the appellant was afforded a hearing. There was no invasion of appellant's constitutional rights. The statute provides for other hearings as frequently as there will be occasion to allocate to appellant's lands specific amounts of benefit.

The district board is required to make assessments annually for the purpose of raising sufficient money for maintenance, interest on bonds and principal of bonds. The sum required shall be apportioned among the benefited properties according to benefits. Rem. Comp. Stat., § 7436. At the time of making the annual levy the board shall estimate the amount of all probable delinquencies on that levy and shall levy a sufficient amount to cover the same and a further amount sufficient to cover any deficit that may have resulted from delinquent assessments for any preceding year. Rem. Comp. Stat., § 7440. There shall be a hearing on the assessment-roll, before the district directors acting as a board of equalization, and adequate notice shall be given to all concerned of the time and place of the hearing. The board shall hear and determine such objections to the assessment-roll as may come before it. Rem. Comp. Stat., §§ 7438 and 7439. Patently, there is no denial of the right of a landowner to a hearing upon the amount of his assessment.

The benefits to the appellant's lands are not only

the benefits accruing by reason of the improvements for the payment of which the district issued bonds in the amount of five hundred and thirty-eight thousand dollars. Lands acquired by the district for unpaid assessments are assets of the district. An added benefit therefrom accrues to the district as a whole and to each landowner individually. Such benefit is a basis, as are the unpaid assessments on other lands within the district, for the secondary liability to which reference is made in *State ex rel. Wells v. Hartung, supra.*

"While appellants argue that interest cannot be considered as part of the benefits for which assessments may be levied, when any lands within the district have paid as much as the total benefits, yet every tract of land within the district became then liable, not only for the principal as the amount of the benefits, but for the interest. Since it was heretofore so judicially determined, the directors have no option, under the statute quoted, but to levy assessments as the statutes specify.

"Nor have the land owners any right to question the assessments on the theory that they have paid assessments equalling the total amount of their benefits. The lands passing into the ownership of the district are not to be considered as liabilities, but assets. It may be that, during periods of depression in the market value of such lands, such as have prevailed for some years, the lands do not appear to be assets. Their temporary exclusion from liability to pay assessments is anticipated by the provisions of the statutes we have quoted. These observations apply to intervenors Schlagel and others similarly situated, as well as to the directors of the district, in the operation of the law.

"Appellants argue that the effect of the *Clancy* case, *supra,* has been overruled, modified, or repudiated in some of our later cases. *Kadow v. Paul, supra,* is cited to the effect that the liability of one owner in a diking district to make up the delinquency of another is secondary and not primary; but that secondary liability, if it exists here, is covered by the fact that the

delinquencies actually exist here and the statutes require them to be made up." *State ex rel. Wells v. Hartung, supra.*

"Supplemental assessments, in providing for the payment for such improvements, are recognized as a legitimate part of the proceeding necessary to raise the money and to pay bonds issued to meet the cost; and if, in the process of collection, it shall appear that some of the assessed land fails to pay the assessment and is appropriated and sold, the distribution of the deficit thus arising, to be included in another assessment, is only meeting the to be expected cost of the improvement. When the operation of the law works uniformly as against all parts of the assessment district, and results in a higher cost of the improvement, and an increased assessment on all the owners of land who have paid, it violates no constitutional right of theirs as long as their benefits continue respectively to exceed their individual assessments." *Kadow v. Paul,* 274 U. S. 175.

Counsel for appellant call attention to the fact that *Coeman v. Chestnut Valley Irr. District,* 74 Mont. 111, 238 Pac. 879, 40 A. L. R. 1344, cited by us in *State ex rel. Wells v. Hartung, supra,* was overruled by *State ex rel. Malott v. Board of County Commissioners,* 89 Mont. 37, 296 Pac. 1, in which the supreme court of Montana held that irrigation district bonds are not general obligations. We note, however, that the Montana supreme court states, as follows, that under the Washington statute, which differs materially from the Montana statute, such bonds are general obligations:

"Many of the decisions of other courts cited are not helpful in determining the matters submitted herein. This because upon investigation we find that in many instances the provisions of the statutes upon which such holdings are predicated are different from the provisions of our statute. The decisions of the supreme court of Washington in the cases of *State ex rel. Clancy v. Columbia Irr. Dist.,* 121 Wash. 79, 208 Pac. 27, and

*State v. Hartung,* 150 Wash. 590, 274 Pac. 181, are cited by relators. Both of these cases hold that the bonds of irrigation districts are general obligations. But an examination of the Washington statute reveals that the law of that state contains the following provision relating to the levy of annual assessments: 'The Board shall also at the time of making the annual levy, estimate the amount of all probable delinquencies on said levy and shall thereupon levy a sufficient amount to cover the same and a further amount sufficient to cover any deficit that may have resulted from delinquent assessments for any preceding year.' (Sec. 6473, Remington Code 1915, as amended by Session Laws of 1921, p. 448.) Our statute contains no such provision." *State ex rel. Malott v. Board of County Commissioners,* 89 Mont. 37, 88, 296 Pac. 1.

Our irrigation statute in no wise offends against the state constitution or the United States constitution. We have considered all of the authorities cited and deem it unnecessary to review them, as *State ex rel. Wells v. Hartung,* 150 Wash. 590, 274 Pac. 181, is determinative of the case at bar.

The judgment is affirmed.

TOLMAN, C. J., PARKER, MITCHELL, HOLCOMB, MAIN, BEALS, and HERMAN, JJ., concur.