[No. 25729. Department Two. September 3, 1935.]

*In the Matter of the Petition of* COLUMBIA IRRIGATION DISTRICT.

L. A. TWEEDT *et al., Respondents,* v. HENRY C. PUDERBAUGH *et al., Appellants.*[1]

[1]Reported in 48 P. (2d) 648.

426

*Bruce E. McGregor,* for appellants.

*Moulton & Powell* and *C. L. Holcomb,* for respondents.

MITCHELL, J.—At all times herein mentioned, Columbia Irrigation District, of Benton county, Washington, has been, and now is, a legally organized irrigation district under the laws of this state. In 1918, 1919 and 1920, the district sold three issues of its bonds, aggregating $550,000, payable commencing ten years from their dates.

It appears that, within a few years, defaults occurred in increasing numbers as to payments due on interest on the bonds. Accordingly, in 1931, negotiations between the bondholders, the district, and some of the landowners in the district, were had that resulted in the making and delivery of three written instruments purporting to change or readjust the outstanding obligations of the district and the consequent liability of some of the lands within the district. This readjustment was attempted by the organization by the bondholders of a corporation under the name of "Benton County Columbia Company," hereinafter spoken of as the company, which company entered into a contract, dated September 14, 1931, with the Columbia Irrigation District, hereinafter spoken of as contract "A," and contemporaneously entered into separate individual contracts with a large num-

ber, but not all, of the landowners within the district, hereinafter spoken of as contract "B;" and at the same time, as a part of the same plan or scheme, a third contract was entered into between the company and Spokane & Eastern Trust Company, as depositary, which contract will hereinafter be spoken of as contract "C."

Contract "A" fixes and amortizes the readjusted amount of the district indebtedness and distributes annual payments of the same over and including the years 1931 to 1960.

Contract "B" releases the lands of the signers from the obligation of outstanding bonds by fixing a definite amount the landowner shall pay. They also provide that the payments shall be made in installments direct to the company and provide that the company shall pay the annual assessments levied against the land. It was also agreed in these contracts that the bonds should be deposited by the company with a trust company (Spokane & Eastern Trust Company of Spokane) to provide certainty of surrender of the bonds upon final payment.

Contract "C" regulates the distribution of money received by the company under the landowners' contracts; such payments to be remitted by the company to the county treasurer, who, in turn, would pay the money to the Spokane & Eastern Trust Company upon surrender of bonds from time to time, which funds were then to be distributed among the bondholders in accordance with the terms of the contract between the company and the trust company.

The parties endeavored without success to operate under these agreements. In 1934, the irrigation district applied to the Reconstruction Finance Corporation for a loan, to be made effective or operative upon the sale and delivery of refunding bonds of the dis-

trict to the Reconstruction Finance Corporation. A loan was accordingly granted in the sum of $180,000.

It may be here stated that, in addition to the three main, original bond issues, the district, in an emergency, issued and delivered bonds, in the sum of $12,500, to the state of Washington, which are also to be refunded by these proceedings, thus calling for a total refunding bond issue of $192,500. The whole scheme, from the bondholders' standpoint, further provides for the payment to them by the district of $22,500 cash (less $2,500 deducted for expenses in connection with the making of the loan), making a total amount of $180,000, plus $20,000, or a grand total of $200,000 available to the bondholders.

Upon making arrangements with the Reconstruction Finance Corporation, the irrigation district then proceeded to take the necessary steps to authorize the issue and delivery of the $192,500 refunding bonds. At the conclusion of such proceedings, the present petition was filed in the superior court, pursuant to Rem. Rev. Stat., §§ 7499 to 7503 [P. C. §§ 3269-3273], praying, in effect, that the proceedings to authorize the issue of refunding bonds be examined, approved and confirmed by the court. The petition was filed by the board of directors of the irrigation district pursuant to a resolution adopted by the board.

In substance, the prayer of the petition is (1) that an order be entered by the court fixing a time and place for hearing the petition and prescribing the notice to be given in accordance with law; (2) that the court examine into the regularity and correctness of the proceedings connected with the issue of refunding bonds which may in any manner affect their legality or validity, and the right and power of the district, through its board of directors, to levy assessments in the manner and form authorized by the stat-

utes of this state relating thereto for the payment
of the bonds and interest thereon; (3) that the court
inquire into the contracts "A," "B" and "C," re-
spectively, and adjudicate the rights of all parties
thereunder, and the effect, if any, of said contracts
upon the validity and legality of the proposed refund-
ing bonds; and to determine to what extent, if any,
such contracts may affect the power of the board of
the district to levy assessments for the payment of
the refunding bonds, as well as the legality of any
and all assessments levied for that purpose; (4) that
the court fully and completely inquire into and ex-
amine all matters referred to in the petition for the
purpose of determining and adjudicating the legality
and validity of all proceedings described in the peti-
tion, the legality and validity of the refunding bonds
issued pursuant thereto, the legality and validity of
all assessments levied in the manner and form pro-
vided by law for the payment of the bonds and the
interest thereon, and that the court fully adjudicate
the rights of all parties who, under the statute author-
izing and governing this proceeding, shall and could
lawfully appear and demur to or answer the petition.

Within the time provided by order of court,
Henry C. Puderbaugh and his wife, who are land-
owners within the district and who signed contract
"B," appeared generally as defendants herein, as-
serting vested rights under contract "B" and denying
the right of the district to issue refunding bonds and
to levy assessments for their payment, thus destroy-
ing the effect of their contract "B."

Edgar Ludwick and his wife, who are landowners
in the same position as the defendants Henry C.
Puderbaugh and wife, *appeared specially*, contesting
the power and jurisdiction of the court, and moved
for a dismissal of the proceedings, on the ground that

this is a special confirmation proceeding in which the court has no jurisdiction to inquire into the validity of the proposed refunding bonds or the legality and validity of assessments to be levied in the future for the payment of them.

H. Burfeind and his wife are landowners within the district who refused to sign contract "B" and appear as defendants, joining in the prayer of the petition of the directors of the district.

Upon due proof of giving the notice required by law and the order of court of the time and place fixed for hearing the petition, a hearing was had, whereupon findings of fact, conclusions of law and judgment were entered in favor of the petitioner, the board of directors of Columbia Irrigation District.

Henry C. Puderbaugh and wife and Edgar Ludwick and wife have jointly appealed.

The findings of fact entered by the trial court are sustained by a fair preponderance of the evidence. They are not contested on the appeal—questions of law only are involved.

All of the steps necessary to be taken in the proceedings for authorizing the issuance of the district's refunding bonds, and for presenting and hearing the district's petition to the superior court for an order approving and confirming the same, have been found and determined by the superior court to have taken place in the form, manner and at the times required by law.

An understanding of the authority of an irrigation district to issue refunding bonds is necessary to a proper appreciation and discussion of the assignments of error. Authority is given by statute, Rem. Rev. Stat., §§ 7434-1 to 7434-7 [P. C. §§ 3274-15 to 3274-21], as amended by chapter 11, Laws Ex. Ses. 1933, p. 23.

Section 7434-1 provides:

"All bonds heretofore issued by any irrigation district in this state may be refunded in the manner hereinafter provided."

Section 7434-2 provides:

"Whenever the board of directors of any irrigation district shall deem it for the best interest of said district that any or all outstanding bonds of said district be refunded, they shall so declare by resolution duly adopted and recorded in the minutes of said board and shall, with the written approval of the state director of the Department of Conservation and Development, submit the question to the legally qualified electors of said district at a general election or at a special election called for that purpose and if a majority of said electors voting at said election vote in favor thereof the directors of said district shall issue and exchange said bonds for those outstanding, or sell said bonds and retire said outstanding bonds."

Section 7434-3 provides for the form, denominations, maturity, etc., of the bonds. Section 7434-4, as amended, regulates the exchange or sale of refunding bonds. Section 7434-5, as amended, refers to the form of refunding bonds, and provides that the outstanding bonds may be retired before maturity, with the consent of the holders, and refunding bonds issued for that purpose. Section 7434-6 provides for the kind of notice of election to be given of proceedings under this chapter; and § 7434-7 provides that the county treasurer shall keep a bond register showing the status and history of bonds sold under the provisions of the chapter.

In this connection, it may be stated that the record shows that an appropriate resolution was adopted and recorded by the board of directors, and the written, requested approval of the state director of the department of conservation and development to sub-

mit the question to the qualified electors of the district was obtained; that an election was held, upon proper notice, and return thereof made as required by law, at which election 279 votes were cast, 277 being for and 2 against the issuance of refunding bonds.

Clearly, the right or power of an irrigation district to refund outstanding bonds is unqualified, save only that it shall be exercised in the manner provided by statute; and it is equally clear that, where the power is thus exercised, the result is binding upon all persons, it being a proceeding *in rem;* provided, of course, the proceedings are followed or supplemented by a judicial order of approval and confirmation, for which purpose the petition of the board was filed and a hearing had in the present case, as required by Rem. Rev. Stat., §§ 7499 to 7503 [P. C. §§ 3269 to 3273].

Having thus considered the question of the power of the board, we may now consider the appeal, with respect to the petition of the board of directors and the scope of the inquiry involved in the petition and the hearing on it.

It is determined in the judgment, among other things, that the notice of filing of the petition and the notice of the hearing upon the petition were given and published for the time and in the manner provided by law and the order of court, and that the court has jurisdiction of the subject-matter and of all parties appearing on their own behalf and as representative of others, including all parties who might or could have appeared herein; that the proceedings authorizing the issuance of refunding bonds in the amount of $192,500, from and including the adoption of the resolution by the board of directors requesting the consent of the director of the department of con-

servation and development to the calling of the special election, until and including the adoption of the resolution by the board of directors on the 9th day of April, 1935, authorizing the issuance, sale or exchange of the refunding bonds described in the petition, including the form of bonds as proposed in the final resolution authorizing the issuance of the bonds, are legal and valid, and are in all things approved and confirmed; and that refunding bonds, when issued, sold and delivered, will be legally valid and general obligations of the Columbia Irrigation District, payable out of revenues derived from annual assessments upon all the real property in the district levied and collected in the manner provided by law.

It is further determined in the judgment that the Columbia Irrigation District had, and has, full power and authority to proceed with the refunding plan, and is not in any manner estopped from so doing by the terms of any or all of contracts "A," "B" and "C"; nor estopped from levying and collecting assessments to pay principal and interest on such bonds; that the court has jurisdiction to determine in this proceeding the validity of contracts "A," "B" and "C," and does determine that they are without validity to prevent or estop the directors of the district from issuing refunding bonds and from levying and collecting assessments to meet the same, as provided by law.

It is further determined in the judgment that the directors of the district have power to create in the surplus fund in the office of the county treasurer a reserve fund, and that, at the time of making the annual levy of taxes specifically required by law for the payment of principal and interest of the refunding bonds, to levy during the first five years of the life of the bonds, in addition to regular levies for the payment of principal and interest, assessments in an

additional amount, the proceeds of which shall be paid into the surplus fund, so that, at the end of the first five years, there shall be created surplus or reserve funds equal in amount to the aggregate bond principal and interest maturities for the next succeeding year; and that, in addition to the power just mentioned, to levy such assessments and to create such surplus or reserve fund, the board shall have power and authority to use such surplus or reserve fund so created for each and all of the purposes declared in the resolution authorizing the issuance of refunding bonds, and to levy assessments therefor, and to maintain said surplus or reserve fund until the final payment of all refunding bonds issued pursuant to the aforesaid resolution, and to levy all such assessments required by the resolution to be levied.

It is further determined in the judgment that the petition filed in this cause sets forth all facts necessary to authorize the court to examine the proceedings and to enter final judgment thereon.

The judgment also recites:

"It is further CONSIDERED, ADJUDGED and DECREED by the Court that neither the contract dated September 14, 1931, between Benton County Columbia Company and Columbia Irrigation District, copy of which is attached to the petition as Exhibit 'A,' nor the contracts entered into between various landowners and Benton County Columbia Company, form of which is attached to the petition as Exhibit 'B,' nor the contract entered into on the 25th day of September, 1931, between Benton County Columbia Company and Spokane and Eastern Trust Company, copy of which is attached to the petition as Exhibit 'C,' nor all of said contracts, constituting one single and entire transaction, can or will in any manner or to any extent affect the legality or validity of refunding bonds issued pursuant to the foregoing proceedings or the legality or validity of any assessments heretofore or hereafter levied by the

Directors of Columbia Irrigation District for the payment of the principal or interest of said bonds or any part thereof.''

It is further provided in the judgment:

'' . . . that the special election authorizing the issuance of refunding bonds was duly and regularly called and held; that all acts required by law to be done and performed by the Board of Directors in connection with the authorization of the issuance of said refunding bonds, both before and subsequent to the holding of said election, and in connection with the holding of said election, have been done and performed in accordance with law; that all notices have been given in the manner and form and for the time required by law, and that each and every act so performed is valid and binding upon the District and upon the real property therein, and each and all of said acts and things so done and performed and all proceedings of the Board of Directors in connection therewith are hereby fully approved and confirmed.''

The judgment in all of these respects is warranted by the findings of fact, which, in turn, are sustained and supported by the evidence.

This is a special proceeding, the purpose and extent of which are defined by Rem. Rev. Stat., §§ 7499-7503 [P. C. §§ 3269-3273]. Section 7499, among other things, says that the board of directors of an irrigation district may commence a special proceeding in and by which the proceedings for and authorizing the issue and sale of bonds or refunding bonds of the district may be judicially examined, approved and confirmed. Section 7500 provides that the petition shall state the facts showing the proceedings had. Section 7501 provides for the giving of notice of the filing and time of hearing the petition, and that

''The notice shall state the time and place fixed for the hearing of the petition . . . and that any person interested . . . in the proceedings for the

issue of or sale of said bonds or refunding bonds . . . may . . . demur to or answer said petition.''

Section 7502 provides that:

''Any person interested in said district or . . . in the issue or sale of refunding bonds . . . may demur to or answer said petition.''

Section 7503 provides that:

''Upon the hearing of such special proceedings, the court shall have full power and jurisdiction to examine and determine the legality and validity of and approve and confirm each and all . . . other proceedings which may affect the legality of the formation of said district or the legality or validity of said bonds, or refunding bonds, and the order for the sale, and the sale thereof.''

It may be noticed that these statutes provide for a proceeding *in rem,* which evidently is binding upon all interested persons to the extent of their lands within the district, as well as persons claiming to have any contract with such landowners.

A number of assignments of error are presented by appellants raising questions argued rather generally. First, it is objected by appellants that the refunding proceedings in this case contemplate the levying of assessments on appellants' lands for the entire indebtedness of the refunding bond issue, contrary to their valid outstanding contracts whereby they may pay the indebtedness on their separate, individual lands and free the same from any and all bonded indebtedness, whether principal or interest; and that to permit the lien occasioned by this refunding bond issue to be placed on their lands violates the terms of those contracts and deprives them of vested interests under the contracts. Second, the same contention is made against the right of the district to

levy, according to law, any one or more assessments against their lands for the payment of the refunding bonds, principal or interest. The contracts referred to and relied on are the "B" contracts, hereinbefore mentioned.

It has been seen that, by statute, the *right and power* of an irrigation district to issue refunding bonds is unqualified, except by the procedural steps necessary under the statute to accomplish the same, which was the law at the date of the contracts relied on, of which law all landowners within a district such as appellants' must take notice. This objection is not procedural, but is a claim in contract, and, if allowed to prevail, would amount to a qualification of the right of the district to issue refunding bonds.

In *Roberts v. Richland Irrigation District*, 169 Wash. 156, 13 P. (2d) 437 (affirmed by the supreme court of the United States in *Roberts v. Richland Irrigation District*, 289 U. S. 71, 53 S. Ct. 519), in considering the general liability features of irrigation district lands, with respect to the liability of each and all tracts of land in the district, it was said:

"An irrigation district is a public corporation having some of the powers of a municipal corporation. The bond obligation is a general corporate obligation. The landowner is not entitled to a segregation of his share of the obligation at the time it is created, or at a later time. There is no provision in the irrigation act for a segregation at any time. The obligation is a general one and all lands within the district are subject to taxation for the payment of the entire obligation. *State ex rel. Clancy v. Columbia Irrigation District*, 121 Wash. 79, 208 Pac. 27; *State ex rel. Wells v. Hartung*, 150 Wash. 590, 274 Pac. 181."

Columbia Irrigation District is a public corporation functioning under legislative grant of power. Its authority as such an organization cannot be destroyed

or weakened by a purported contract, such as contract "B," wholly unauthorized by law. These contentions, under the assignments of error, are without merit, in our opinion.

Contrary to another contention on behalf of the appellants, the provision in the judgment that the court has authority to pass upon the validity of contracts "A," "B" and "C" is justified, in our opinion, since the contracts appear to stand in the way and must be considered in determining the validity of proceedings of the district for the issuance of the refunding bonds, and because this is a proceeding *in rem* whereby all of the parties to the contracts will be bound whether they actually appear herein or not.

The judgment approving and confirming the legality of the *proceedings* of the board of directors of Columbia Irrigation District concerning and affecting the legality or validity of the refunding bonds proposed to be issued and the order for the sale thereof are hereby affirmed.

MAIN, STEINERT, GERAGHTY, and BLAKE, JJ., concur.