[Nos. 28061, 28062. Department One. August 8, 1940.]

THE STATE OF WASHINGTON, on the Relation of Archie Pryor, Plaintiff, v. TIMOTHY A. PAUL, as Judge of the Superior Court for Benton County, Respondent.

THE STATE OF WASHINGTON, on the Relation of Walter Weller et al., Plaintiff, v. TIMOTHY A. PAUL, as Judge of the Superior Court for Benton County, Respondent.[1]

[1] Reported in 104 P. (2d) 745.

*Harcourt M. Taylor,* for relators.

*Moulton & Powell,* for respondent.

BLAKE, C. J.—The relators in these two cases are making original applications in this court for mandamus to compel the superior court of Benton county, Honorable Timothy A. Paul, judge presiding, to retain and exercise jurisdiction of a cause brought into the superior court of Benton county pursuant to the provisions of chapter 79, Laws of 1897, p. 207 (Rem. Rev. Stat., §§ 7526-7530 [P. C. §§ 3354-3358]), entitled, "An Act providing for the disorganization and *liquidation* of irrigation districts which have no bonded indebtedness, *and the winding up of their affairs.*" (Italics ours.)

Complying with the provisions of § 4 of the act, p. 208 (Rem. Rev. Stat., § 7529 [P. C. § 3357]), the board of directors of Horse Heaven Irrigation District presented to Honorable Matt L. Driscoll, judge of the superior court for Benton county, an "application for an order of said superior court that such irrigation district be declared disorganized and dissolved, *and that its af-*

*fairs be liquidated and wound up, as provided for in this [the] act."* After notice duly given as prescribed by § 4 of the act, Judge Driscoll, on January 31, 1939, entered an order dissolving and disorganizing the district. Included in the order was a provision, in accord with provisions of § 5 of the act, p. 208 (Rem. Rev. Stat., § 7530 [P. C. § 3358]), to the effect that the directors of the district should

". . . proceed as trustees of the creditors and property holders of said District . . . liquidating all of the assets of said District, . . . report to this Court . . . *and account for the property and money of said District to this Court."* (Italics ours.)

June 9, 1939, the trustees filed an "Account and Petition for Distribution of Assets and Final Discharge." From this report, it appears that the trustees have in their possession assets of the approximate value of $385,000 for distribution to persons who may be entitled thereto by virtue of the provisions of the act. Judge Driscoll entered an order fixing September 7, 1939, as the day of hearing of the account and petition and directing notice be given of the hearing to interested persons by mailing, publishing, and posting of the order in the manner specified therein.

The account and petition for distribution finally came on for hearing before Judge Paul on March 28, 1940. In the meantime, more than four hundred persons had appeared in response to the notice, claiming interest in the assets in varying proportions. Conceiving that, under the act, the court had power merely to declare the district dissolved and disorganized and to discharge the directors, Judge Paul disclaimed jurisdiction and entered an order discharging the trustees.

The applications for mandamus are here made in one case (No. 28061) by a claimant to a portion of the trust property; in the other (No. 28062) by the trustees.

■ That mandamus lies to compel a superior court to assume jurisdiction erroneously disclaimed, is well settled. *State ex rel. Shannon v. Hunter*, 3 Wash. 92, 27 Pac. 1076; *State ex rel. Smith v. McClinton*, 17 Wash. 45, 48 Pac. 740; *State ex rel. Strohl v. Superior Court*, 20 Wash. 545, 56 Pac. 35, 45 L. R. A. 177; *State ex rel. Martin v. Superior Court*, 101 Wash. 81, 172 Pac. 257, 4 A. L. R. 572; *State ex rel. Seattle & R. V. R. Co. v. Superior Court*, 123 Wash. 116, 212 Pac. 259.

■ It must be admitted that the act (chapter 79, Laws of 1897) does not prescribe in detail the procedure by which the assets of a dissolved irrigation district shall be liquidated and distributed. Read as a whole, however, it is clear that the obligation of liquidating and distributing the assets rests upon the erstwhile directors as "trustees of the creditors and of the property holders of said district." § 5. While that section specifies certain powers and duties imposed upon the trustees, it places no limitation upon their powers in "winding up the affairs" of the district. From the same section, it is apparent that they are not entitled to discharge until "any balance of moneys . . . shall be divided and refunded to the assessment payers . . ." And it is clear, too, that, in the exercise of their powers and duties as trustees, they are subject to the supervisory control of the superior court. The court's power is not limited to merely entering an order dissolving the district and discharging the directors. The act (§ 5) specifically provides: "Said board of directors shall report to the court from time to time *as the court may direct,* . . ." (Italics ours.)

Through Judge Driscoll, the court did direct the trustees to report and in the exercise of its well recognized chancery power did undertake to implement the statute in the liquidation of the district's assets and the

winding up of its affairs. It was not only within its power, but it was its duty,.to so proceed. It had, by due process of law (by the procedure taken under chapter 79, Laws of 1897), obtained jurisdiction of a trust estate. In such cases, in the absence of prescribed statutory procedure, a court of equity has inherent power to administer the trust estate and see that it is distributed to the persons who are entitled to share in it; and the court may proceed either upon its own motion or upon the application of the trustees or beneficiaries. Restatement of the Law of Trusts, § 200g; Bispham's Principles of Equity (10th ed.), § 20; 21 C. J. 116, § 93; 19 Am. Jur. 153, § 167; *In re Stewart's Estate*, 26 Wash. 32, 38, 66 Pac. 148, 67 Pac. 723; *Clews v. Jamieson*, 182 U. S. 461, 45 L. Ed. 1183, 21 S. Ct. 845; *Broughton v. Pensacola*, 93 U. S. 266, 23 L. Ed. 896.

In the *Clews* case, the court said:

"Pomeroy in his work on Equity Jurisprudence, second edition, instances, among other equitable estates and interests which come within the jurisdiction of a court of equity, those of trusts. In volume one, at section 151, he says: 'The whole system fell within the exclusive jurisdiction of chancery; the doctrine of trusts became and continues to be the most efficient instrument in the hands of a chancellor for maintaining justice, good faith, and good conscience; and it has been extended so as to embrace not only lands, but chattels, funds of every kind, things in action, and moneys.'

"All possible trusts, whether express or implied, are within the jurisdiction of the chancellor. . . . A court of equity will always, by its decree, declare the rights, interest or estate of the *cestui que trust*, and will compel the trustee to do all the specific acts required of him by the terms of the trust."

And in the *Broughton* case:

"If a municipal corporation, upon the surrender, or extinction in other ways, of its charter,.is possessed of

any property, a court of equity will . . . take possession of it for the benefit of the creditors of the corporation."

The fact that there are no creditors in this instance does not justify the court in disclaiming jurisdiction of the trust estate. The trust estate is still in existence and still within the jurisdiction of the court. It is the court's duty to see that it be properly administered by the trustees and distributed to the persons entitled to share in it.

A peremptory writ of mandamus will issue as prayed for by the relators.

MAIN, MILLARD, STEINERT, and ROBINSON, JJ., concur.