[No. 28910.   Department Two.   September 18, 1943.]

*In the Matter of the Dissolution and Disorganization of*
Horse Heaven Irrigation District.

Chester Anderson, *Respondent,* v. Otto Piening *et al.,*
*Appellants.*[1]

[1]Reported in 141 P. (2d) 400.

90

*Horrigan & Horrigan* and *Andrew A. Brown,* for appellants.

*B. E. McGregor* and *Moulton & Powell,* for respondent.

ROBINSON, J.—On June 9, 1939, the trustees of the Horse Heaven Irrigation District (a dissolved district) filed their account and petition praying for the distribution of the assets of the district to those by law entitled thereto, that the trust estate administered upon by them be closed, and that they be discharged from their trust. In their account, the trustees reported that Rudolph Piening and Otto Piening were the owners of certain described land within the limits of the district and were entitled to have distributed to them a proportionate part of its assets. Chester Anderson filed written objections to this part of the account, claiming that, on February 4, 1939, the date of the entry of the order of the court dissolving the district, he held a contract to purchase the land from the owners thereof and was entitled to have such assets distributed to him.

Issues were made up by an answer by Otto Piening and Johanna Piening, husband and wife, and Rudolph Piening to the written objections and by the reply of Chester Anderson thereto. A trial was had before the court, and a judgment was entered adjudging that, on February 4, 1939, when the Horse Heaven Irrigation District was dissolved, Otto Piening and Johanna Piening, his wife, and Rudolph Piening were the owners of the legal record title to the land involved, and that, on this date, Chester Anderson was the holder of a written contract for its purchase from them, and that, by reason thereof, was entitled to have distributed to him a proportionate share of the assets of the

district. Otto Piening and wife and Rudolph Piening have taken an appeal from the judgment of the court.

We do not feel required to enter into a discussion of the question as to what exact legal relation a contract purchaser holds to the land purchased, a matter which has been the subject of much diversity of opinion and of much controversy among the members of the bar, particularly since the decision of *Ashford v. Reese,* 132 Wash. 649, 233 Pac. 29; for, if the trial court correctly held that the respondent was, in law and fact, a contract holder at the date of dissolution, its judgment must be affirmed on the authority of our *En Banc* decision in *In re Horse Heaven Irrigation District,* 11 Wn. (2d) 218, 118 P. (2d) 972. For the full background of the matter, see also, *State ex rel. Pryor v. Paul,* 5 Wn. (2d) 90, 104 P. (2d) 745. The material facts, which we find to be supported by a preponderance of the evidence, are as follows:

On February 24, 1936, the appellants contracted to sell the land involved here to respondent, the price to be paid in annual installments, and the contract contained a forfeiture clause available to appellants in the event the respondent failed to pay the purchase price as therein provided, but the vendors were required to give him twenty days' notice of their intention to forfeit. The respondent covenanted to pay the taxes levied upon the land. By the terms of the contract, he entered into possession of the land and remained in possession during all of the time material here. None of the deferred payments of the purchase price was paid by respondent, nor does it appear that he paid any of the interest provided therein, but he did pay the taxes.

In September, 1937, the appellants became dissatisfied because the respondent had not made the payment of principal and interest which had become due January 1, 1937. They contacted respondent, told him he was behind in his payment, expressed the opinion that he could not "make it," and suggested that he had better give up the property. To this, the respondent replied that he did not

then have any money with which to make the payment, and said, "Go ahead and take the land back." The appellants then informed respondent that they had a chance to sell the land to one Mercer, and respondent replied, "Go ahead and sell it. I am through with it. I cannot pay it."

By November 20, 1937, the transaction with Mercer had failed of consummation, and, in a conversation between appellants and respondent, he asked, and was told, the price for which they proposed to sell the land to Mercer, whereupon the respondent offered to buy it at such price. This price was less than the selling price mentioned in the contract of February 24, 1936, and provided easier terms of payment. In the presence of appellants Rudolph Piening, Otto Piening, and the respondent, a contract of sale from them to him was prepared by an attorney, which they all signed November 22, 1937. Mrs. Johanna Piening, the wife of Otto Piening, was not named as a party to the contract and did not sign it. The purchase price was fixed at $2,240, of which one hundred dollars was paid in cash, and the respondent agreed to pay the balance at the rate of two hundred dollars a year, commencing May 1, 1938, and semiannual interest at the rate of five per cent per annum. One copy of the contract was given to appellants and one to respondent, but neither party was able to produce their or his copy before trial.

On June 6, 1938, respondent paid one hundred dollars, and, on October 17, 1938, he paid $53.50 interest. Nothing further having been paid on the contract by respondent, appellants contacted him on August 29, 1939, and, as a result, the respondent gave to the appellants a quitclaim deed to the land, and they then executed and delivered to him a lease on the land for a period of three years. Johanna Piening did not sign the lease. Prior to this time, the respondent had paid the taxes on the land for the years 1936, 1937, and 1938, one payment being made on October 7, 1937. On May 8, 1939, the appellants and respondent joined in the execution of a deed for an easement across a part of the

land and the consideration therefor was received and retained by respondent.

Based upon the foregoing facts, we are of the opinion that, under the rule adopted by this court in *In re Horse Heaven Irrigation District,* the respondent, as holder of a contract to purchase the land involved on February 4, 1939, which was the date of the entry of the order of the court dissolving the district, became vested with the right to have paid to him a proportionate share of the assets of the dissolved district.

It is the contention of appellants that the doctrine of *In re Horse Heaven Irrigation District* does not apply here, because the original contract to purchase the land held by respondent was forfeited, and surrendered or abandoned by him in September, 1937; that the second contract to purchase the land, made November 22, 1937, was invalid because Johanna Piening, the wife of Otto Piening, was not a party thereto, and did not sign it (their interest therein being community property), and hence the respondent could not claim any legal rights thereunder or arising therefrom and was not within any class of beneficiaries of the assets of the dissolved district as defined in that case.

But we think the facts of this case do not warrant the conclusion arrived at by appellants. Although the respondent was in arrears in the payment of what was owing by him under the contract, the appellants did not make any attempt to forfeit it. The nonpayment of the purchase price when due did not of itself operate as a forfeiture. Some affirmative action on the part of the appellants notifying the respondent of an intention to claim a forfeiture was required. The forfeiture clause contained in this contract was not self-executing. It merely conferred upon the appellants an option to declare a forfeiture upon a notice of twenty days, and did not become effective until the appellants availed themselves of the privilege given to them and gave the required notice of their intention so to do. *Zeimantz v. Blake,* 39 Wash. 6, 80 Pac. 822; *Clizer v. Krauss,*

57 Wash. 26, 106 Pac. 145; *Gottschalk v. Meisenheimer*, 62 Wash. 299, 113 Pac. 765, 115 Pac. 79; 66 C. J. 767, § 357.

The respondent did not surrender or abandon his contract. All he did was to inform the appellants that he was then unable to pay them what was due, that he was "through with it," and suggested that they take the land back and sell it, but he remained in possession and paid the taxes thereon. It must be borne in mind that these remarks were made when the appellants had a prospect of selling the land to another and were urging the respondent to give up the property so they could do so. He was not asked for any quitclaim deed, so as to clear the title of his recorded contract, the surrender of his contract, or to vacate the property. There does not appear to have been any present intention on his part to surrender or abandon the contract or the premises. What was said by us on page 344 of the case of *Parchen v. Rowley*, 196 Wash. 340, 82 P. (2d) 857, is applicable here:

"Certainly, under the undisputed facts, there was no abandonment of the contract by Barlow prior to October, 1934. He never repudiated the contract, nor refused to carry it out—although it is claimed he made the statement he could not pay the balance due. This alone, however, cannot be construed as an offer to rescind or a declaration of abandonment. Appellant cannot be deprived of his legal rights under the contract by a casual remark of that sort. Had the statement been accompanied by surrender of possession of the property, a different situation would be presented. But it is to be remembered that, when appellant moved off the property, he did not surrender possession to Parchen. He remained in possession through his tenant, Hogue. Nor was there any change in the status of the contract after October, 1934, by reason of any act or conduct on his part. While he did not tender performance, neither did he, by word or conduct, thereafter manifest an intention to abandon the contract. His status under the contract remained exactly the same until December 10, 1934, when Mrs. Parchen entered into the contract to sell the property to Homan."

When the respondent ascertained that the selling price to Mercer was to have been $2,240, he offered to pay

that sum, and it was then what the parties termed a new, or second, contract of sale and purchase was entered into. But when the situation of the parties and their course of conduct is considered and the fact that neither they nor the attorney whom they consulted deemed it necessary that Johanna Piening be a party thereto or sign the same, we think it was their intention it should be, and the effect of the contract drawn was, a modification of the original contract changing the amount of the purchase price and the terms of payment. We therefore hold that, when the decree of dissolution of the irrigation district was entered, the respondent was the owner and holder of a valid contract to purchase the land described therein and is entitled to have distributed and paid to him the proportionate share of the assets of the district.

But even though it were held that the respondent intended to, and did in effect, surrender and abandon his original contract to purchase the land, we would feel constrained to hold that the second real estate contract executed November 22, 1937, became a valid one even though Johanna Piening, the wife of Otto Piening, did not sign it. Assuming, as we do, that the interest of Otto Piening and Johanna Piening, his wife, in the land was a community interest, it appears that Mrs. Piening left all business matters in connection with this property to her husband and his brother Rudolph. She knew that the respondent was in possession of the land and farmed it under a contract to purchase. The community received and had the benefit of the principal and interest paid by respondent on the contract. She joined with her husband, his brother, and the respondent in the execution of a right of way deed to an easement over the land after the second contract was executed. The opening sentence of this instrument begins as follows:

"KNOW ALL MEN BY THESE PRESENTS, That Chester Anderson and Jessie Anderson his wife *as contract purchasers* and Otto Piening and Johanna Piening, his wife, and Rudolph Piening single as record title holders . . . " (Italics ours.)

We have adopted the rule that, if a husband enters into a contract to sell or lease community real estate without his wife joining therein, and she either consents thereto or subsequently sanctions or ratifies his act, neither she nor the community may thereafter disaffirm it. *Konnerup v. Frandsen,* 8 Wash. 551, 36 Pac. 493; *O'Connor v. Jackson,* 33 Wash. 219, 74 Pac. 372; *Hay v. Chehalis Mill Co.,* 172 Wash. 102, 19 P. (2d) 397; *Bowman v. Hardgrove,* 200 Wash. 78, 93 P. (2d) 303.

The course of conduct of the parties here was such as to make the foregoing rule applicable. The second contract was ratified by Johanna Piening, and it must be concluded that, on the date of dissolution of the irrigation district, the respondent was the holder of a valid contract to purchase the land described therein, since this must follow whether he be considered as holding under the first contract, as modified by the second, or under the second, as a separate and independent instrument. Accordingly, upon the authority of our holding in the case of *In re Horse Heaven Irrigation District,* 11 Wn. (2d) 218, 118 P. (2d) 972:

The judgment appealed from is affirmed.

SIMPSON, C. J., BEALS, BLAKE, and GRADY, JJ., concur.